WEAVER *v.* STATE.

Opinion delivered May 20, 1907.

83    119
d85   303

1. WITNESS—ACCUSED TESTIFYING IN HIS OWN BEHALF.—When an accused takes the stand in his own behalf, he does so subject to the rule allowing the testimony of a witness to be impeached by proof of contradictory statements, as for example in an affidavit for continuance. (Page 120.)

2. HOMICIDE—EVIDENCE OF CHARACTER.—Where a defendant, accused of murder, offers evidence to prove his good reputation for being peaceable and decedent's bad reputation in that respect, it was not error to permit the State to rebut this evidence by showing that decedent's reputation was good while that of defendant was bad. (Page 122.)

3. HOMICIDE—SELF-DEFENSE—RETREAT OF ADVERSARY.—Where the testimony of one accused of murder shows that he fired the fatal shot before there was any appearance of immediate danger to himself, and consequently that he was not justified in so doing, it was not error for the court to refuse to instruct the jury that if an assault with intent to kill or to inflict great bodily harm was made by deceased on accused, and if, when deceased was apparently withdrawing from the locality of the attempt, it reasonably appeared to accused that deceased was withdrawing for the purpose of securing a position from which he might renew the combat with effect, accused would be justified in killing deceased. (Page 122.)

Appeal from Randolph Circuit Court; *John W. Meeks,* Judge; affirmed.

*Witt & Schoonover,* for appellant.

*Wm. F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

McCULLOCH, J.    Appellant, John A. Weaver, was convicted of murder in the second degree under an indictment charging him with murder in the first degree in the killing of one Campbell, in Randolph County.  The killing occurred in the field where Campbell was at work, appellant being his landlord.  There were no eye-witnesses except Lester Campbell, the ten-year old son of deceased, but the killing is admitted, and appellant seeks to justify it on the ground of self-defense.  His statement of the facts was that he went into the field where Campbell was at work for the purpose of talking with him about the planting of his crop.  He says that there had been no previous trouble of any kind between them, and that he had no reason to suspect a difficulty.  That he had his Winchester rifle, as he was sick, and was loitering about the place to look after the fences and hunt such game as he might see.  He states that he asked Campbell when he would plant his cotton, and that the latter replied to him in an angry tone, saying, "Weaver, you have been lying around here with your old Winchester and pistol as long as I am going to have you, and you must get out."  That, after some words between them, Campbell jumped at him and grabbed for his (appellant's) gun, catching him by the waist and raking the skin off with his finger nail.  His statement then proceeds as follows: "I jumped back and punched him in the back with the gun.  He then turned and called his boy, and said, 'Go, bring me my gun,' and started towards the boy, who started towards a tree near by.  I believed the gun was close by, and that he intended to meet the boy and get the gun and renew the attack, and under this belief I shot twice quickly."

The boy testified that when the quarrel arose between the two his father told him to go to the house and get his gun, and that he had started toward the house when the shooting took place.

The first assignment of error is in the ruling of the court in permitting the State to introduce in rebuttal an affidavit made by appellant at a former term of court in support of a motion for continuance.  The motion set up as one of the grounds for continuance the absence of two witnesses who, it alleged, would testify that they were each present in sight and within hearing at the time of the difficulty between appellant and de-

ceased, and that at the time of the killing the deceased was
making an assault upon defendant with a gun; and that after
the difficulty the said witnesses saw the little boy going toward
the house from the scene of the difficulty with a gun on his
shoulder. It will be seen that the statements in the motion were
in conflict with those made by appellant on the witness stand, in
that he said these two witnesses were present, and that he shot
Campbell while the latter was making an assault upon him
with a gun. He affirmed in his affidavit that these facts were
true. This court held in *Burris* v. *State,* 38 Ark. 221, and
*Polk* v. *State,* 45 Ark. 165, that it was error to introduce in
evidence an affidavit made by defendant in a criminal prosecu-
tion in support of the motion for continuance. The ground up-
on which the court based the decisions was that the only effect
of the evidence was to show that the defendant was guilty of
perjury, and that it was improper to do so. It must be borne
in mind that both these decisions antedated the statute permit-
ting defendant in criminal prosecutions to testify. In those
cases the character of the defendant was not at issue, either as
defendant or as witness. Since the passage of the statute en-
abling defendants to testify in their own behalf, when an ac-
cused takes the stand he does so subject to all the rules allowing
testimony of witnesses to be impeached by proof of contradic-
tory statements. *Smith* v. *State,* 74 Ark. 397.

So the decisions above cited are not in point as controlling
the question before us now for consideration. Appellant in his
testimony on the witness stand related a state of circumstances
attending the killing which were contradicted by the allegations
of his motion for a continuance, which motion he had signed and
sworn to. It is true that a part of his own testimony tends to
show that he was not advised of the contents of the motion
when he signed it. And the testimony of one of his attorneys
goes to show that he signed and swore to the motion without
knowledge of its contents. But on cross-examination he con-
cedes that he knew these statements were contained in the
motion by saying that his attorneys had advised him that they
had heard that said witnesses would testify to those facts, and
that he signed the affidavit upon that information. Of course,
those were matters for the consideration of the jury in testing

his credibility. His former statement contained in the affidavit went to the jury subject to the explanation which he had given, and it was competent for that purpose.

Appellant also complains that the court erred in permitting improper cross-examination of witnesses as to the character of deceased. Appellant put his reputation for peace and quiet in issue, and therefore laid it open for attack by the State. He also attacked the character of deceased, and the State was properly allowed in rebuttal to introduce testimony showing good character. We have carefully examined the testimony of all the witnesses, and we find that no error was committed. The questions asked by the State fell fairly within the rules of cross-examination.

The court refused to give the following instruction asked by the appellant:

"1. You are instructed that if you believe from the evidence that the defendant was assaulted by the deceased, with the intent to kill him or to inflict on him great bodily harm, the defendant was not bound to retreat, but had the right to stand his ground, and, if necessary, kill his assailant, if it was apparently necessary to save his life or prevent deceased from doing him great bodily harm. And if you find from the evidence that such an assault was made by the deceased, and that afterwards he was apparently withdrawing himself from the immediate locality of the attempt, if it appeared to the defendant, in the exercise of reasonable care and prudence at the time, that the withdrawal of deceased was for the purpose of securing a position from which he might renew the combat with effect, in such case it was not necessary that the defendant suspend his defense; but, if the circumstances at the time were such as to excite the fears of the defendant, so that the danger of being himself killed or receiving great bodily injury at the hands of the deceased seemed to him not only impending but so urgent and pressing as to render the killing necessary to save his own life, or prevent his receiving great bodily harm; and if the jury believe from the evidence that the defendant really and in good faith acted under the influence of such fear, and without fault or carelessness on his part, and not in a spirit of revenge, then

the killing would be justifiable, and you should find the defendant not guilty."

By this instruction appellant sought to invoke the rule laid down by this court in *Luckinbill* v. *State*, 52 Ark. 45, that "where one is defending himself from an unlawful attempt to shoot him, it is not incumbent upon him to suspend his defense because his assailant is withdrawing himself from the immediate locality of the attempt, if such withdrawal is apparently for the purpose of securing a position from which to renew the combat with more efficiency." The evidence of defendant himself and his own account of the transaction do not, however, bring him within this rule. He does not say that the deceased was seeking a more advantageous position. His statement is that he believed that the gun was close by, and that the deceased intended to meet the boy and get the gun and renew the attack. Now, if his testimony had tended to show that deceased was about to seek refuge behind a tree, or other obstruction, and then renew the difficulty, he would have had the right, under the rule in the Luckinbill case, to shoot before deceased secured this point of vantage if it was necessary to do so in order to protect himself. But deceased, according to appellant's own statement, was not seeking to get behind a tree, and was going to meet the boy in the open to get the gun from him. The evidence shows that there was no gun in the field except the one in the hands of appellant, and that the boy was told to go to the house to get one; but we are testing this instruction by appellant's own evidence. And we find that it is wholly insufficient to justify the court in giving the instruction which is quoted. Appellant's own testimony shows that he fired the fatal shot before there was any appearance of immediate danger, and that he was not justified. It can not be said that he was acting in self-defense in firing upon a fleeing antogonist before the latter had secured a weapon of defense.

Appellant's statement of the facts, if believed by the jury, was sufficient to warrant them in reducing the grade of his offense to manslaughter; but this instruction told the jury that if he fired under those circumstances he was justified. The court in other instructions, given of its own motion, fully and fairly submitted to the jury the question of the degree of the offense,

and permitted them, if they believed appellant's statement, to find him guilty of only the lower offense. We find no error of the court in refusing the instruction.

Nor did the court err in its instruction given on motion of the State with reference to the appellant's testimony. It is urged that the instruction is erroneous because it singles out appellant's testimony, and separates it from the other witnesses, and seeks to apply a different rule to it. We find no error in the instruction. Such a one in substance has received the approval of this court. *Blair* v. *State,* 69 Ark. 558, and cases cited.

Upon the whole, we find no error in the record, and the judgment is affirmed.