BLACK *v.* BEEN.

5-1855        323 S. W. 2d 545

Opinion delivered May 4, 1959.

*George W. Johnson* and *Donald Poe,* for appellant.

*Hugh M. Bland,* for appellee.

GEORGE ROSE SMITH, J. This suit was brought by the appellees, Luther and Vera Been, to obtain reformation of a deed by which they conveyed a tract of about forty acres to the appellants, Virgil and Lois Black. The complaint asserts that the parties intended for the grantors to reserve all the mineral interest in the land, but

by mutual mistake this reservation was left out of the deed. The chancellor sustained the plaintiffs' contention and entered a decree granting the prayer for a reformation.

The appellants' principal insistence is that the appellees failed to meet the burden of proving by clear and convincing evidence that a mutual mistake occurred. *Hicks* v. *Rankin*, 214 Ark. 77, 214 S. W. 2d 490. After a careful study of the record we are unable to say that the chancellor was wrong in holding that the plaintiffs satisfied their heavy burden of proof.

In 1948 the Beens executed a written contract by which they agreed to sell this tract and another forty to Lloyd and Janice Mills for $3,000, payable in installments over a period of ten years. The contract expressly provided that the sellers were to reserve all the minerals underlying both tracts. Later in 1948 the purchasers assigned their interest in the contract, which had been recorded, to Marion and Minnie Phillips, who began to pay the yearly installments in accordance with the agreement.

In 1952 the appellant Virgil Black negotiated with Marion Phillips for the purchase of the tract now in controversy. After some haggling about the price it was finally agreed that Black would buy the land for $1,000. This arrangement was acceptable to the appellees, the Beens, who had their attorney prepare a deed conveying the land to the Blacks. The purchase price of $1,000 was paid to the Beens, who applied it as a credit against the balance that was still owed by the Phillipses as assignees of the original contract. Although that contract had provided for a reservation of the minerals no such provision was inserted in the deed from the Beens to the Blacks, and this is the instrument that the chancellor reformed.

The pivotal question is whether the Blacks had knowledge of the fact that the minerals were to be retained by the Beens. On this point both Marion Phillips and his wife testified positively that Black was informed during the negotiations that the minerals were

not to be included in the sale. (Mrs. Phillips also says that she showed the original contract to Virgil Black, who read it.) This testimony is corroborated by Luther Clark, an apparently disinterested witness, who states that he heard part of the discussion between Phillips and Black and that the former told Black "that Mr. Been's mineral rights don't go with it."

Thus three witnesses, none of whom has any pecuniary interest in the case, affirmatively state that Black was told about the reservation of the minerals. On the other side there is only the testimony of Virgil Black, an interested party, who denies that anything was said about the mineral rights. This conflict narrows down to an issue of credibility, upon which we are guided by the chancellor's decision. *Souter* v. *Witt*, 87 Ark. 593, 113 S. W. 800, 128 A. S. R. 40.

Counsel for the appellants vigorously insist that there could not have been a mistake common to the Beens and the Blacks, because the latter negotiated only with the Phillipses and did not discuss the proposed transaction with these appellees. Even so, these litigants were the sole parties to the deed, which is the contract now in controversy, and we are convinced that they labored under the same mistake about its contents. That is, the sellers assumed that the deed contained a reservation of the minerals, because that provision was contained in the installment contract that gave rise to the deed; and the buyers also assumed that the minerals were being reserved, because they had been so informed during the negotiations with the Phillipses. It is plain enough that a mutual mistake can exist even though the buyer and seller have not dealt directly with each other; for otherwise reformation could never be had with respect to an agreement negotiated through an agent, a broker, or some third person.

We find no merit in the appellants' remaining contention, that the appellees are barred by laches as a result of not having filed their suit until 1958. This defense does not appear to have been pleaded or presented in the trial court, and, further, there is nothing to in-

dicate that the delay has worked any disvantage to the appellants. *Jewell* v. *General Air Conditioning Corp.*, 226 Ark. 304, 289 S. W. 2d 881; *Jones* v. *Temple*, 126 Ark. 86, 189 S. W. 847.

Affirmed.

WARD and JOHNSON, JJ., dissent.

PAUL WARD, Associate Justice, dissenting.

I cannot bring myself to agree with the majority opinion in this case.

This court has frequently and consistently announced the rule applicable to the reformation of a deed on the ground of mutual mistake. In *McGuigan* v. *Gaines*, 71 Ark. 614, 77 S. W. 52, this court, after recognizing that a written instrument could be reformed by parol evidence where a mutual mistake had been made, stated:

> "... There is no doubt that a court of equity may reform a written instrument where on account of mutual mistake the instrument does not reflect the intention of the parties thereto, and it may do so although the mistake be proved by parol evidence only. But in such cases, where the court is asked to reform a written contract against the will of one of the parties thereto, a court must, as a matter of common prudence, proceed with caution, and will decree a reformation only where the evidence shows clearly and conclusively that justice requires it. 'In no case,' says Mr. Bishop, 'will a court decree an alternation in the terms of a duly executed written contract, unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough. The mistake must appear beyond reasonable controversy.'"

Numerous other cases could be cited to the same effect.

It is my opinion that the evidence in this case does not measure up to the above required standard. Before the court would be justified in reforming the deed in question it must be shown, by clear and convincing evidence, that there was a meeting of the minds by Black and Been

that the mineral rights were not to be conveyed. In *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139, the court said: ''Equity has jurisdiction to reform written instruments in but two well defined cases: (1) Where there is a mutual mistake, that is, where there has been a meeting of minds, and agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto''. (The other is where there is a mistake by one party and fraud by the other.) The same statement was approved in *Hervey* v. *College of Ozarks,* 196 Ark. 481, 118 S. W. 2d 576.

There is no contention here, and certainly no proof, that Black was guilty of fraud.

I am unable to find in this record *any* evidence, much less clear and convincing evidence, that Black and Been had an agreement or meeting of the minds relative to the mineral rights. Been himself makes no such contention. On the other hand he testified that he did not converse with Black with reference to a reservation of mineral right. Nor can this vital element of *agreement* or *meeting of the minds* be supplied by inference in this case, it seems to me. It is true that there is evidence tending to show Black knew Been had reserved the mineral rights in a sales contract with another party covering this and other lands, but this was no clear and convincing indication that Been would not be willing to give a fee deed to Black, or that Black did not expect one from Been. It is important to note, in this connection, that the contract *was not* assigned by anyone to Black. So far as the record reveals, there was no significant connection between the deed and the contract. The former in no way depended on the latter.

Also, it seems to me, certain circumstances bear out the conclusion that there was no *mutual* mistake, *i.e.* no mistake by Black. (a) The deed was prepared by an attorney, in his own office, selected by Been, and was signed by Been and his wife in the presence of the attorney after he had asked them if it met with their approval.

This is the deed which Black accepted and he stated positively that there was no mistake. (b) The deed in question was executed and delivered in 1952, but this suit was not brought by appellees to reform it until June 25, 1958. Six years appears to be a long time in which to reach a decision to seek redress for a mistake which the majority think is so clearly and convincingly shown. Such a long and unexplained delay suggests an after thought rather than a *bona fide* grievance.

JOHNSON, J., joins.