## M.S. DELONE, DELONE OPERATING CO., and MAXWELL DRILLING COMPANY, INC. *v.* UNITED STATES FIDELITY & GUARANTY COMPANY

CA 85-346                              707 S.W.2d 329

Court of Appeals of Arkansas
En Banc
Opinion delivered April 9, 1986

*Michael R. Landers* and *Friday, Eldredge & Clark*, by: *Donald H. Bacon*, for appellants.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee.

GEORGE K. CRACRAFT, Chief Judge. M. S. Delone, Delone Operating Company, and Maxwell Drilling Company, Inc. appeal from an order of the chancery court denying their petition to reform an insurance policy issued by United States Fidelity & Guaranty Company. We find no error.

Appellant companies were involved in producing oil on lands owned by appellant Delone and in drilling wells for others under contract. For several years the appellants obtained automobile liability insurance coverage from the United States Fidelity & Guaranty Company through Bob Brown, president of United States Insurance Agency in El Dorado. Prior to 1980 appellants had in effect an automobile liability policy for a fleet of vehicles with limits of $500,000, for each occurrence.

In 1980 appellants entered into a contract with Branch Investment, Inc. for the drilling of a well. That contract specifically required appellants to keep in effect automobile liability coverage which afforded protection for personal injuries of $250,000 for each person, $500,000 for each occurrence, and $250,000 for personal property damage. Delone sent the contract to United States Insurance Agency with instructions to Brown to do what was necessary to make certain that appellants had the insurance coverage required by that contract. U.S.F. & G. issued an endorsement which provided automobile liability coverage of $250,000/$500,000/$250,000 which was not limited to the Branch Investment contract, but afforded that reduced coverage to appellants' entire fleet without regard to any particular activity or job.

Delone testified that he was not aware of the extent of the change until April 28, 1981, when one of his vehicles was involved in a fatal collision. In September of 1982 a complaint was filed against appellants in the Circuit Court of Bradley County for wrongful death. The appellees assumed responsibility for the defense of that action under the policy. A settlement was

subsequently reached for $336,120, of which amount the appellee tendered $250,000, the limit of its policy. The appellants then brought this action in equity for reformation of the policy so as to provide limits of $500,000 and recovery of the amounts expended by them in settlement of the wrongful death claim. In the alternative, appellants prayed for judgment against United States Insurance Agency for failing to provide coverage of $500,000. The action against United States Insurance Agency was transferred to circuit court and the claim for reformation proceeded to trial. The chancellor found there was no mutual mistake which would warrant reformation and dismissed the plaintiff's petition. Appellant brought this appeal contending that the trial court erred in so ruling. We agree with the chancellor that, based on the facts of this case, reformation was not an available remedy for appellants' loss.

In July of 1980 appellant entered into a written drilling contract with Branch Investment, Inc. which contained specific liability insurance requirements of $250,000/$500,000/$250,000. Copies of the contract were sent to Brown with instructions that he do what was necessary to make sure that the appellants met the insurance requirements of the contract. Delone had no further conversation with Brown about the contracts or the insurance policies until after the fatal accident had occurred. Although Delone stated he had no intention of reducing his coverage from the $500,000 single limit other than for the Branch job, it is not clear that this intention was communicated to anyone.

Brown testified that when he received the contract from appellant, he was asked to obtain a certificate of insurance to reflect that the requirements of the contract had been met. He sent the contract to the appellee requesting an amendment of the general liability and automobile policy to conform to the requirement of that contract. The appellee responded, asking Brown whether he wanted to change the limits to $250,000/$500,000/$250,000 or increase to a $750,000 single limit policy. Brown circled the $250,000/$500,000/$250,000 and returned the letter to appellee. He testified that in doing so he intended to change the policy only as to the particular drilling contract but not for appellants' entire fleet of vehicles. He stated that he had no intention of reducing the $500,000 single limit coverage other

than as to that specific contract at that time.

Brown admits, however, that he was informed by appellee that it could not, and would not, write a policy of insurance which afforded one coverage limit for vehicles while engaged in a particular activity and another limit for those same vehicles while engaged in other activities. When the policy was delivered to the agency, there was a notation typed on it that the policy limits were changed from $500,000 combined single limits to split limits of $250,000/$500,000/$250,000 because of the contract requirements, but that the same limits would apply to *all* activities. When the policy was delivered to the appellants, the notation had been removed. Appellant Delone admitted receiving the endorsement, but stated that it was not examined. Brown testified:

> As of September 19, 1980, I knew that what I thought I was doing in July couldn't be done and as of then I would have to say that it was my intention that the policy limits be $250,000/$500,000/$250,000 for all risks. U.S.F. & G. issued exactly what I asked on the Branch contract. There was no mistake on the part of U.S.F. & G. . . . I made a mistake. I did change to the $250,000/$500,000 without discussing it with him. It was my intent . . . to change to the split limits of $250,000/$500,000/$250,000. Nancy Brown advised me that if the Branch job was finished we needed to change the limit back to the $500,000. I did not do anything to change the Branch contract. . . .
>
> . . . .
>
> . . . I was not notified when the Branch contract was complete. There was no arrangement for me to be advised when the Pickens contract was undertaken or completed. . . . After September, 1980, there was never any request made to U.S.F. & G. to change [the] endorsement . . . to $500,000 single limit. When I responded to Nancy Brown I requested $250,000/$500,000 and that is what U.S.F. & G. issued. . . .
>
> . . . .
>
> . . . There is no doubt in my mind that if I had been in contact with Mr. Delone and found the Branch contract had been completed I would have done whatever was

necessary to make sure full coverage was restored.

█ It is clear that at the time the policy was issued it contained precisely what the appellee intended it to contain. Brown knew at that time that he did not have authority to bind the company to a contract other than the one delivered to him and he accepted it without communicating those facts to the appellants, even though he might have had the intention of reestablishing the prior limit when the current contract was completed. Under these circumstances reformation is not an available remedy.

█ Reformation is an equitable remedy which is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence that agreement. A mutual mistake is one shared by both parties at the time their agreement is reduced to writing and it must be shown clearly and decisively that the parties intended their written agreement to say one thing and, by mistake, it expressed a different thing. *Yeargan* v. *Bank of Montgomery County*, 268 Ark. 752, 595 S.W.2d 704 (Ark. App. 1980); *Corey* v. *Mercantile Ins. Co. of America*, 205 Ark. 546, 169 S.W.2d 655 (1943). An order reforming a written instrument cannot be based upon a unilateral mistake unless there is a mistake on one side and fraud or inequitable conduct on the other. *Arnett* v. *Lillard*, 245 Ark. 939, 436 S.W.2d 106 (1969). It is apparent from the evidence in this case that any misconception on the part of the appellants as to what the policy contained was a unilateral mistake on the part of appellants and was not shared by the appellee. There is no basis for reformation.

██ Appellants argue in the alternative that, if there was no mutual mistake at the time the policy was issued, it should be reformed because of the second mutual mistake—Brown's failure to reinstate the higher limits when the Branch contract was completed. The record reflects that appellee had informed Brown that when the Branch contract was completed the limits could and would be increased if requested. Brown testified that he was aware of this and intended to have the limits increased, but did not because he did not know when the Branch contract was completed and had not discussed it with appellants. We do not construe this as an agreement on the part of the appellee to do anything. It was

only a suggestion of what might be done by appellee and of intention on the part of Brown. Furthermore, reformation deals with the reforming of written instruments to conform to the intent of the parties at the time they are executed. There was no second written instrument to reform. Nor could it relate back to the original writing for purposes of reformation because it was not part of the agreement at the time that agreement was reduced to writing.

Our decision in *Equity General Agents, Inc.* v. *O'Neal*, 15 Ark. App. 302, 692 S.W.2d 789 (1985) discusses the decisions relied upon by appellants. However, that decision is clearly distinguishable. In *O'Neal*, the insured owned two automobiles which were insured under a policy issued through a local agency. When that policy was cancelled and coverage placed with another company, both the insured and the agency intended for the new policy to provide coverage for both vehicles. Through an admitted error of the agency, one of the vehicles was omitted from that policy. We held that reformation of the policy was warranted because: (1) the insured and agency both intended that the policy cover both vehicles; (2) the failure to provide that coverage was due to an admitted error of the agency; (3) the agency had the authority to bind the insurer on both vehicles; and (4) the risk was of the type the insurer would normally accept. Here, although both the appellant and the agent testified that they intended the policy change to affect only the one activity, failure to provide separate coverage was not due to a mutual error. The policy was issued precisely as the agent had ordered and after any misconception on his part had been corrected by U.S.F. & G. In this case, the agent did not have authority to bind the appellee to issue the intended contract and the company would not normally have accepted such a risk.

Affirmed.

CORBIN, J., dissents.