Troy F. LAMBERT *v.*
James I. QUINN and Deborah Quinn, His Wife

CA 89-509                                          798 S.W.2d 448

Court of Appeals of Arkansas
Division II
Opinion delivered November 14, 1990

*William L. Owen*, for appellant.

*O. Joseph Boeckmann*, for appellee.

GEORGE K. CRACRAFT, Judge. Troy Lambert appeals from a decree of the chancery court reforming a deed executed to him by appellees James and Deborah Quinn on finding that the description in the deed was the result of a mutual mistake of the parties. Appellant contends that there could be no mutual mistake, as a matter of law, and that the finding of mutual mistake is not supported by clear and convincing evidence. We find no error and affirm.

James Quinn's father, Garvis Quinn, owned a 1.4 acre tract of land in Cross County, on which he lived with his wife, Ruby Quinn. He subsequently purchased an adjoining tract containing 1.5 acres. A 1.08 acre parcel of that tract was transferred to Jerry Harris on an installment contract with a lien retained by Quinn. Quinn retained the remaining .42 acre of the second tract and he had his wife used it as a yard and a garden. Garvis Quinn died in 1986 and, by his will, left Ruby Quinn the 1.4 acre home site by a metes and bounds description of the original 1.4 acres, but did not include the adjoining .42 acre parcel. All the residue of his estate was left to his son, appellee James Quinn, who resided in Idaho.

Ruby Quinn continued to occupy the home and the .42 acre tract adjacent to it, and in February 1987 constructed a swimming pool and other improvements on the .42 acre tract. She also erected a wooden fence along the line separating it from the tract that was sold to Harris. Harris subsequently defaulted in his payments and reconveyed his interest in the 1.08 acres to James Quinn, as residual beneficiary under the will of Garvis Quinn. James Quinn then employed Opal McDermott, a real estate agent, to sell all of his Arkansas property, mistakenly believing that the only land he owned was that which had been reconveyed to him by Harris.

In August 1987, James and Deborah Quinn executed a deed to appellant containing a metes and bounds description that did not exclude the .42 acre tract retained by Garvis Quinn in his deed to Harris. Ruby Quinn's son moved a house trailer on the property and they continued to occupy it and make exclusive use of the swimming pool.

After appellant served notice on Ruby Quinn to vacate the .42 acre tract of land in February 1988, appellees filed this action for reformation of appellant's deed on grounds of mutual mistake. In the decree, the chancellor found that the parties had been mutually mistaken and that the deed did not reflect the agreement of the parties. The decree ordered that the deed be reformed so as to omit the .42 acre tract occupied by Ruby Quinn. This appeal followed.

Reformation is an equitable remedy which is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence that agreement. *Delone* v. *United States Fidelity & Guaranty Co.*, 17 Ark. App. 229, 707 S.W.2d 329 (1986). Mutual mistake must be shown by clear and decisive evidence that, at the time the agreement was reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. There must be a mistake by both parties, by reason of which both of them have done what neither intended; each must have labored under the same misconception in respect to the terms of the written instrument. *Yeargen* v. *Bank of Montgomery County*, 268 Ark. 752, 595 S.W.2d 704 (Ark. App. 1980). Although a finding of mutual mistake must be supported by clear and convincing proof, the proof need not be undisputed. *Falls* v. *Utley*, 281 Ark. 481, 665 S.W.2d 862 (1984). Whether mutual mistake warranting reformation occurred is a question of fact. *Turner* v. *Pennington*, 7 Ark. App. 205, 646 S.W.2d 28 (1983). Although we review chancery cases *de novo* on the record, the test on review of this case is not whether we are convinced that there is clear and convincing evidence to support the trial judge's findings, but whether we can say that the trial judge's findings were clearly erroneous. *Akin* v. *First Nat'l Bank*, 25 Ark. App. 341, 758 S.W.2d 14 (1988); *Freeman* v. *Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987).

Appellant first argues that, as a matter of law, there could be no mutual mistake because James Quinn admitted that he did not read the deed before he signed it. Appellant relies on the generally accepted rule that one is bound to know the contents of a document signed by him, and if he has had the opportunity to

read an instrument before he signs it, he cannot escape its obligations by asserting that he signed it without reading it. *Stone v. Prescott School Dist.*, 119 Ark. 553, 178 S.W. 399 (1915). This is a rule of general application where unilateral mistake is asserted, but it has no application to a plea for relief in equity due to mutual mistake. In reformation cases, the issue is not what the document actually says, or what one party intended it to say, but whether the document truly expresses the agreement made by both parties at the time. When a description in a deed embraces lands which the seller did not intend to sell and the buyer did not intend to buy, its inclusion in the deed is the result of mutual mistake of the parties and may be corrected in chancery. *Glover v. Bullard*, 170 Ark. 58, 278 S.W. 645 (1926). Therefore, we do not agree that there could be no mutual mistake as a matter of law.

We also conclude that the chancellor's finding that James Quinn proved that a mutual mistake occurred was not clearly erroneous. Ruby Quinn testified that she had considered the .42 acre tract to be part of the curtilage of the home devised to her by Garvis Quinn. The property line between the original home site and the 1.5 acre tract ran within a few feet of the house. After they purchased it, they fenced .42 acres of it in with their home place and planted gardens and fruit trees on it. Two of the three outbuildings were located at least partially on that tract. She said, "If anyone would look, they would know that it goes with the house . . . ." She constructed a swimming pool on the .42 acre tract at a cost in excess of $10,000.00 and swam in and maintained it during the summer that appellant purchased the Harris tract. She was unaware that the metes and bounds description by which her husband's will devised the home to her did not include this area.

James Quinn verified that, before his father's death, there was a fence between the .42 acre tract and the Harris property. The will did not devise the Harris land to him, but the residuary clause did give to him the right to collect the installments under the contract on which it was sold. After Harris became unable to make the payments, the land was reconveyed to Quinn as residual beneficiary. James Quinn testified that, when he instructed McDermott to sell all the land he owned in Arkansas, he was not aware that the legal title to the .42 acre tract was vested in him and he intended to sell only the Harris tract. He stated that he had

no intention to sell lands that he did not know that he owned.

Shannon Hix testified that he had surveyed the lands for Garvis Quinn at the time he purchased the 1.5 acre tract. He surveyed it again at the time Quinn sold the 1.08 acre tract to Harris. He testified that after the swimming pool was constructed and the fence in place, he went back at the request of Ruby Quinn to make a perculation test on the .42 acre tract. While he was there appellant came up to him and handed him what he recognized as his survey of the 1.08 acre tract conveyed by Garvis Quinn to Harris. Hix testified that appellant asked him to point out the lines of the survey on the ground, which he did. He stated that appellant appeared satisfied with the line and commented only that the fence ran within a foot of his line.

Opal McDermott testified that she was employed by James Quinn to sell all the property he owned in Cross County. She denied that he instructed her to sell only the tract formerly owned by Harris. She checked the deed records and found that James Quinn owned 1.5 acres and obtained the proper description of the property. She stated initially that, although she knew that she was offering 1.5 acres for sale, she did not know that part of it was being used by Ruby Quinn as a yard and thought that the swimming pool was on Ruby Quinn's property. At another time she testified that, at the time of closing, she regarded the pool as lying on the property being sold. The attorney preparing the transfer papers stated that he had no contract with James Quinn and received all of his instructions from McDermott.

Appellant testified that he had not labored under a mistake as to the extent of the land being sold to him and that he intended to purchase the entire 1.5 acre tract including the house, swimming pool, and the trailer located on it. The chancellor found appellant's testimony to be unworthy of belief and expressly found from appellant's actions that he too was mistaken as to the boundaries of the land being purchased by him. The court stated:

> The actions of Troy Lambert belie his statements at trial. The swimming pool was constructed in February, 1987. He purchased the 1.08 acre tract the following August. The pool was obvious to anyone who looked at the property. Mr Lambert made absolutely no mention of the pool during his negotiations to purchase the property nor

with anyone connected with the loan closing. He made no objection from August, 1987 to March, 1988, to Mrs. Quinn's physical possession of the .42 acre tract on which the pool is located. Mr. Lambert had ample opportunity to mention his alleged ownership because he had several conversations with Mrs. Quinn during this period of time. The most damaging testimony to Mr. Lambert's position is that of county surveyor Shannon Nix. Mr. Lambert talked with Mr. Nix regarding the location of the boundary and the location of a fence along the boundary. Mr. Lambert allowed Mrs. Quinn's son to move a mobile home onto the .42 acre tract. As stated, Mr. Lambert's actions belie the position he has now adopted in this action. If the Court were to accept Mr. Lambert's version, it would have to find that he purchased land on which an expensive swimming pool was located and that he made no effort whatsoever to use the pool, being content to watch others use it daily. This Court can certainly resort to its common sense—it is not human nature to react in this fashion. The purchase price of the land demonstrates that it did not include the pool. Mr. Lambert is simply not a credible witness and the Court so finds. The evidence is abundantly clear that he too was mistaken as to the boundaries of the property described in the deed. To rule otherwise, would be to enforce an agreement that was never made. Mr. Lambert received exactly what he paid for and that was a parcel of land containing 1.08 acres. He is entitled to nothing more.

■ Nor do we find merit in appellant's argument that the deed could not be reformed because of the knowledge on the part of the real estate agent that the deed calls described 1.5 acres. This argument was decided adversely to the appellant in *Black* v. *Been*, 230 Ark. 526, 323 S.W.2d 545 (1959). There, the court stated that the issue was whether the parties to the contract labored under a mutual mistake, and that such a mistake can exist where the buyer and seller had not dealt directly with each other. In any case, the issue is whether the writing fails to reflect the parties' true understanding without regard to what an agent or scrivener thought was intended. *See Kohn* v. *Pearson*, 282 Ark. 418, 670 S.W.2d 795 (1984); *Akin* v. *First Nat'l. Bank, supra.*

■ From our *de novo* review of the record, we cannot

conclude that the chancellor's finding that clear and convincing evidence established that a mutual mistake had occurred warranting reformation of the deed is clearly erroneous.

Affirmed.

MAYFIELD and COOPER, JJ., agree.