2010 Ark. App. 801

**Jay Elmore STALTER and Charlotte Darlene Stalter, Appellants**

v.

**Jimmy GIBSON And Dianne Gibson, Appellees.**

**No. CA 10–366.**

Court of Appeals of Arkansas.

Dec. 1, 2010.

Richard Hartley Mays, Mays & White, PLLC, Heber Springs, for appellant.

Melvin E. Morgan, Morgan Law Firm, P.A., Clinton, for appellee.

RAYMOND R. ABRAMSON, Judge.

In this case from Van Buren County, the parties are at odds over the effect of a deed conveying 170 acres that contained no reservation of mineral rights. Appellants Jay and Charlotte Stalter, who were the sellers, asked the circuit court to set the deed aside or reform it to reflect their reservation of half of the mineral rights. Appellees Jimmy and Dianne Gibson, the buyers, claimed that the deed accurately memorialized the parties' agreement to convey all mineral rights to the buyers when the buyers paid off the property. Following a bench trial, the circuit court upheld the deed as written. The Stalters now seek reversal of the court's decision and challenge the admission of parol evidence and character evidence. We affirm the court's order.

## Background and procedural history

The Gibsons bought the Stalters' property for $70,000, most of it to be paid in monthly installments. The sales contract contained a clause in the property description that reserved half of the mineral rights to the Stalters. The contract also contained a clause that gave the Gibsons half of the mineral proceeds upon reducing the principal to $35,000, and a provision that continued to reserve half of the mineral rights in the Stalters after the Gibsons paid the entire balance due. The parties executed the contract at a June 9, 1992 closing. That same day, the Stalters ostensibly executed a warranty deed that reserved in them half of the mineral rights, and executed an escrow agreement that required them to deliver the deed to Heber Springs State Bank, which would hold the deed until the Gibsons made full payment.

In early 2004, the Gibsons paid the balance of the contract, and Dianne Gibson asked Jay Stalter to deliver the deed. When Mr. Stalter could not find the original deed at the bank or any other location, he asked Becky Burroughs, a friend of his who worked at the bank, to draft another deed. Ms. Burroughs did so, based on a property description that Mr. Stalter provided. Significantly, the deed contained no reservation of mineral rights. The Stalters signed the deed and attempted to record it in Van Buren County in January 2004, but the deed was defective because the Gibsons' names were misspelled and it incorrectly located the property in Cleburne County. The Van Buren County Clerk therefore rejected the deed.

Charlotte Stalter informed Dianne Gibson about the rejected recording, and Mrs. Gibson, a court reporter with experience as a legal secretary, offered to prepare a revised deed. She did so, based on the deed previously prepared by Becky Bur-

roughs. This second deed also contained no reservation of mineral rights. Nevertheless, the Stalters signed the deed without complaint. Mrs. Gibson attempted to record this deed, but it was again rejected because it still incorrectly located the property in Cleburne County.

Mrs. Gibson then prepared a third deed, which correctly placed the land in Van Buren County. As with the two previous deeds, it reserved no mineral rights in the Stalters. The Stalters signed the deed without complaint, and the deed was recorded in November 2004.

In 2006, a SEECO representative inquired about leasing mineral rights on the Stalters' remaining property, and the Stalters asked him to consider a lease of their reserved half interest in the 170–acre parcel. It was at that time, according to Mr. Stalter, that he discovered the November 2004 deed did not reserve a mineral interest to him and Mrs. Stalter. He broached the subject with the Gibsons, who refused to cede any mineral rights. The Stalters then filed suit to either set aside the November 2004 deed or reform it to reflect their ownership of half of the property's mineral rights. The Gibsons took the position that the November 2004 deed embraced the parties' true, oral agreement that the Gibsons would receive all of the property's mineral rights once they paid the full sales price. The circuit court granted summary judgment to the Gibsons, which we reversed and remanded in *Stalter v. Gibson*, CA08–198, 2008 WL 4287171 (Ark.App. Sept. 17, 2008) (*Stalter I*). Our opinion recited that "the intent of the parties at the time the deed was signed was in dispute" and that "resolution of the conflict depended on which version of facts was to be believed." *Id.*, slip op. at 3.

At the bench trial held upon remand, the parties agreed to the essential facts surrounding the signing of the 2004 deeds. Their testimony was in conflict, however, regarding the existence of any oral understandings reached during the 1992 closing. Dianne Gibson testified that she reviewed the sales contract during closing and questioned those provisions purporting to reserve half of the mineral rights in the Stalters after the full purchase price was paid. She testified that her inquiries were met with assurances that the Gibsons would receive all of the mineral rights upon paying off the contract. She said further that, when she prepared the correction deeds in 2004, she asked Jay Stalter if anything should be mentioned in the deeds about mineral rights. She said that Mr. Stalter replied, "No. If there's no mention of mineral rights, then the mineral rights go with the land." Mr. Gibson similarly recalled that Jay Stalter told Mrs. Gibson during the closing that the Gibsons "would get all the minerals when it was paid off."

Mr. and Mrs. Stalter denied any conversations with the Gibsons that varied the terms of the sales contract and declared that they had no intention of granting the Gibsons all of the property's mineral rights.[1] The Stalters additionally stated that, in 2006, Mr. Gibson agreed that a mistake had been made in the 2004 deeds. The Stalters could not, however, deny signing three deeds in 2004, none of which reflected a reservation of mineral rights. They attributed their signatures on the deeds to mistakes made in haste. The Stalters also offered testimony concerning the 1992 deed, which was supposed to have been delivered to Heber Springs State Bank for safekeeping. They said that the original deed could not be found but that

---

1. Real-estate agent Thelma Bailey, who also attended the closing, likewise denied making any statements that the Gibsons would receive all of the property's mineral rights.

the bank had a photocopy, which Mrs. Stalter retrieved at some point. This deed bore the Stalters' signatures and reflected their reservation of half of the property's mineral rights.[2] Dianne Gibson testified that she and Mr. Gibson did not receive this deed.

Following the trial, the circuit court ruled that the parties' intentions were at best unclear and that the evidence did not carry sufficient weight to reform the November 2004 deed. The Stalters brought this appeal.

### Reformation

The Stalters argue that the circuit court should have reformed the November 2004 deed to include a mineral-rights reservation. They contend that the 1992 real-estate sales contract clearly provided for the reservation of half of the mineral rights in them and that the omission of the reservation in the November 2004 deed occurred through mutual mistake.

■ Reformation is permitted when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in a written instrument purporting to evidence the agreement. *Akin v. First Nat'l Bank*, 25 Ark.App. 341, 758 S.W.2d 14 (1988). The party seeking reformation must present clear and convincing evidence of a mutual mistake. *Id.* A mutual mistake occurs when both parties are laboring under the same misconception with respect to the terms of the written instrument. *See Mikus v. Mikus,* 64 Ark. App. 231, 981 S.W.2d 535 (1998). Whether a mutual mistake warranting reformation has occurred is a question of fact. *Lambert v. Quinn,* 32 Ark.App. 184, 798 S.W.2d 448 (1990). We review reformation cases de novo. *Turner v. Pennington,* 7 Ark. App. 205, 646 S.W.2d 28 (1983). But, we

do not reverse the circuit court unless its finding was clearly erroneous. *Akin, supra.* We also defer to the circuit court's superior position to evaluate the evidence. *Id.*

■ In the present case, we conclude that the circuit court did not clearly err in refusing to reform the November 2004 deed. The court may well have determined that the Stalters' affixing their signatures over the course of ten months to three separate deeds, none of which contained a mineral-rights reservation, cast serious doubt on their claim that they intended to retain any mineral rights. The trial court may also have considered it noteworthy that the first of the 2004 deeds was prepared at Jay Stalter's request, based on a description that he provided to Ms. Burroughs. As mentioned, this deed did not reserve any mineral rights in the Stalters. Furthermore, the circuit court could reasonably have found that a mutual mistake did not occur given Dianne Gibson's testimony that the parties had orally acknowledged the Gibsons' right to the minerals upon paying for the land in full.

The Stalters rely on *McCullough v. Leftwich*, 232 Ark. 99, 334 S.W.2d 707 (1960), *Black v. Been,* 230 Ark. 526, 323 S.W.2d 545 (1959), *Pennington, supra,* and other cases in which our courts affirmed the reformation of a deed to include a reservation of mineral rights. However, the key is that *McCullough, Black,* and *Pennington,* all affirmed the lower court's findings. The cited opinions make it plain that their affirmances rest on the particular facts in each case and on the circuit court's resolution of conflicts in the evidence. As in those cases, we likewise cannot say that the lower court here was clearly wrong.

■ Alternatively, the Stalters argue that reformation was warranted based on

---

2. The Stalters apparently did not attempt to prove the validity of the lost original deed.

their own unilateral mistake, coupled with inequitable conduct by the Gibsons. We see no evidence of inequitable conduct by the Gibsons that would merit reversal. Dianne Gibson prepared the second and third deeds by reference to the first deed that Jay Stalter had prepared for him by his friend at the bank. And, there was no proof that the Gibsons attempted to obscure the content of those deeds or exercise duress on the Stalters; rather, they presented the deeds to the Stalters, who had ample opportunity to read them and view their contents. Furthermore, Mrs. Gibson's testimony concerning events at the 1992 closing supports the distinct possibility that the Gibsons were legitimately pursuing what they understood to be the parties' true agreement.

The Stalters also claim that, if the 2004 deed is viewed as a new agreement that supersedes the 1992 real-estate contract, the agreement must fail for lack of consideration. There was proof, however, as testified to by Mrs. Gibson, that the 2004 deed did not constitute a new agreement but instead correctly reflected the parties' original intent. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Rymor Bldrs., Inc. v. Tanglewood Plumbing Co., Inc.,* 100 Ark. App. 141, 265 S.W.3d 151 (2007).

For these reasons, we affirm the circuit court's decision that the Stalters did not prove by clear and convincing evidence that they were entitled to reform the November 2004 deed.

### Parol evidence

The Stalters argue under this point that the circuit court violated the parol-evidence rule when it permitted the Gibsons to testify about oral understandings and agreements made prior to the signing of the 1992 real-estate sales contract.[3]

Testimony that tends to alter, vary, or contradict a written contract is generally inadmissible under the parol-evidence rule. *Brown v. Aquilino,* 271 Ark. 273, 608 S.W.2d 35 (Ark.App.1980); *Gallion v. Toombs,* 268 Ark. 955, 597 S.W.2d 842 (Ark.App.1980). Our courts, however, have held many times that parol evidence is admissible in reformation cases based on mutual mistake. *See Morton v. Park View Apts.,* 315 Ark. 400, 868 S.W.2d 448 (1993); *Garot v. Hopkins,* 266 Ark. 243, 583 S.W.2d 54 (1979); *Galyen v. Gillenwater,* 247 Ark. 701, 447 S.W.2d 137 (1969); *Miller v. Neil,* 2010 Ark. App. 555, 377 S.W.3d 425. This is so because an allegation of mutual mistake necessarily requires evidence that the parties' intent differs from the written instrument—in this case, a deed. We implicitly recognized this concept in *Stalter I,* where we stated that the parties' intent at the time the deed was signed was in dispute and that the resolution of the conflict depended on which version of facts was to be believed. We therefore find no error on this point.

### Character evidence

During the bench trial, Circuit Judge David Laser (who was not the presiding judge in this case) took the stand to testify as a character witness for Dianne Gibson. Judge Laser stated that Mrs. Gibson had been his court reporter for eleven years and had a reputation in the community for being truthful, honest, and above reproach. The circuit court allowed the testimony over the Stalters' objection that character

---

**3.** The Stalters' brief makes it clear that they rely on the 1992 sales contract as the embodiment of the parties' true agreement. They do not cite the photocopy of the 1992 deed as the operative instrument.

evidence was prohibited unless Mrs. Gibson's reputation for truthfulness had been attacked. The Stalters now argue that the court erred in admitting the character evidence. We review the court's ruling for an abuse of discretion. *Schueck · v. Burris*, 330 Ark. 780, 957 S.W.2d 702 (1997).

 Rule 608(a) of the Arkansas Rules of Evidence allows opinion or reputation evidence to support the credibility of a witness, subject to two limitations: 1) the evidence may refer only to the witness's character for truthfulness or untruthfulness, and 2) evidence of the witness's truthful character is admissible only after her character for truthfulness has been attacked. In the present record, we discern no attack on Mrs. Gibson's character for truthfulness during the bench trial beyond the typical disagreement between litigants over the recollection and meaning of certain events. The mere fact that a witness is contradicted by other evidence does not constitute an attack on the witness's character for truthfulness. *Collins v. State*, 11 Ark.App. 282, 669 S.W.2d 505 (1984).

In bench trials, however, we will not reverse for admission of incompetent evidence unless all of the competent evidence is insufficient to support the judgment or unless it appears that the incompetent evidence induced the trial court to make an essential finding that would not otherwise have been made. *Rich Mountain Elec. Coop., Inc. v. Revels,* 311 Ark. 1, 841 S.W.2d 151 (1992). Neither of those exceptions apply here. We therefore see no prejudicial error in the circuit court's admission of the evidence. We do not reverse in the absence of a prejudicial error. *See Jones v. Coker,* 90 Ark.App. 151, 204 S.W.3d 554 (2005).

Based on the foregoing, we affirm the circuit court's order and intermediate rulings.

Affirmed.

ROBBINS and KINARD, JJ., agree.