2012 Ark. App. 248

**James MERRYMAN and Phyllis Merryman, Appellants**

v.

**Debra CARGILE, Appellee.**

No. CA 11–1099.

Court of Appeals of Arkansas.

April 11, 2012.

Rehearing Denied May 16, 2012.

Brett Blakney, Clinton, for Appellants.

John C. Aldworth, Clinton, for Appellee.

RITA W. GRUBER, Judge.

James and Phyllis Merryman, husband and wife, bring this appeal from a July 11, 2011 decree of reformation for two fiduciary deeds issued in an earlier probate proceeding and for deeds in the subsequent chains of title. The fiduciary deeds describe two tracts of land in Van Buren County. A trial was held in the circuit court on a complaint for reformation by appellee, Debra S. Cargile, and on a counterclaim to quiet title by appellants and Doyle and Ronda Merryman, husband and wife. The circuit court found that, based upon an erroneous assumption that the boundary line between two tracts was a county road, a mutual mistake had been made in the drafting of a 1993 settlement agreement regarding the division of property in the estate of Opal M. Rather, deceased, and that the mistake resulted in the preparation of the 1994 fiduciary deeds. The court ordered reformation of the deeds to accurately reflect the acreage owned by appellee, appellants, and Doyle and Ronda Merryman. The court also instructed that oil and gas leases, entered into by the parties and held by SEECO, be reformed prospectively in accord with the court's findings.[1]

As an initial matter, appellants contend that the circuit court was without jurisdiction to reform the probate orders eighteen years after they were issued. On the merits of their appeal, they contend that the circuit court's decision to order reformation is not supported by clear and convincing evidence and is erroneous as a matter of law. We find that the circuit court properly exercised its jurisdiction to order reformation, and we affirm its order.

## The Circuit Court's Jurisdiction to Reform the Deeds

Appellants contend that the circuit court lacked jurisdiction to reform the prior orders of the probate court and, thus, the fiduciary deeds resulting from the court's order of reformation are void and unenforceable. The concept of privity, however, does not restrict reformation only to those who were parties to the mistake. *Johnston v. Sorrels*, 21 Ark.App. 87, 729 S.W.2d 21 (1987). Our supreme court has explained that the effect of cases saying that a mistake will be corrected only between original parties and those claiming under them in privity is that "the court will not interfere in favor of subsequent purchasers who were simply ignorant of the former mistake and may be presumed to have intended to take by the

---

1. Neither SEECO nor Doyle and Ronda Merryman are parties to this appeal.

description used." 21 Ark.App. at 92, 729 S.W.2d 21 (citing *Blackburn v. Randolph,* 33 Ark. 119, 125 (1878)). When a subsequent grantee seeking reformation was not a party to the instrument sought to be reformed,

> he must be able to introduce additional evidence raising a question of fact as to whether he was simply ignorant of the former mistake and intended to buy the property as described or whether he had assumed, for example, that the particular piece ⌊₃of land was described when in fact it was not.

> These requirements having been met, the fact finder must then determine whether as between each successive party there has been such a mutual mistake or mistake by one and inequitable conduct by another as would actually warrant reformation under the facts of the case.

*Whisenhunt v. First State Bank of Conway,* 79 Ark.App. 395, 400, 90 S.W.3d 438, 442 (2002) (citing *Johnston v. Sorrels, supra*).

In the present case, appellee was a subsequent grantee whose testimony and documentary evidence raised a question of fact regarding whether she and her former husband intended to buy the property described by the deeds in their chain of title. The circuit court therefore had the power to determine whether a mutual mistake existed such as would warrant reformation of those deeds.

### The Circuit Court's Finding of Mutual Mistake

Appellants contend that the circuit court's decision to order reformation is not supported by clear and convincing evidence and is erroneous as a matter of law. They argue that three trial witnesses who had participated in the settlement agreement made it clear that the parties had intended that appellee's predecessor was to receive the land east of the county road, less one acre in the corner of that tract, and that appellant was to receive everything west of the county road plus the one acre, as described in the deeds.

The claimants to the Rather estate were appellee's predecessor in title, Thomas and Becky Rogers, and Doyle Merryman and James Merryman as tenants in common. The 1993 settlement agreement between the claimants addressed division of an approximately eighty-acre tract into two parcels separated by a county road. The administrator of the estate ⌊₄accordingly issued two fiduciary deeds in 1994 that divided the North Half of the Northwest Quarter of Section 19, Township 10 North, Range 14 West.

One fiduciary deed conveyed to Doyle Merryman and James Merryman as tenants in common all that part of the North Half of the Northwest Quarter (Pt. N1/2 NW1/4) Section 19, Township 10 North, Range 14 West, "lying west of the county road, containing 40 acres, more or less"; and part of the Northeast Quarter of the Northwest Quarter (Pt. NE1/4 NW1/4) Section 19, Township 10 North, Range 14 West, "beginning at the Southwest Corner of Said NE1/4 NW1/4," containing one acre, more or less. The other fiduciary deed issued by the estate administrator conveyed to Thomas and Becky Rogers, husband and wife, all that part of the North Half of the Northwest Quarter of Section 19, Township 10 North, Range 14 West, "lying east of the county road, 40 acres, more or less," except the acre conveyed to the Merrymans. No survey was made at the time of the settlement agreement.

Surveys made in 1999 and 2005 at appellee's request indicated that the legal descriptions in the two 1994 fiduciary deeds did not describe two tracts of forty acres,

more or less. Instead, one deed conveyed to Thomas and Becky Rogers approximately thirty-four acres and included the Merryman house and the other conveyed to the Merrymans approximately forty-six acres, including an acre erroneously thought to be where the house was located. In 2009 appellee sold twenty-two acres of her parcel to a third party not affected by this case.

Appellee's complaint in circuit court requested reformation of certain deeds. She alleged that at the time of the 1993 settlement agreement, all parties had accepted the county [5]road as the dividing line between the Northeast and Northwest Quarters of the Northwest Quarter. She alleged that the 1999 survey indicated the county road actually "ran substantially to the east of the 40–acre boundary line, causing approximately eight acres to be transferred to the Merryman chain of title and excluded from the Rogers chain of title," and that no one was paying property taxes for the eight acres, which remained unimproved, unfenced, and unoccupied by any of the parties. She also alleged that the survey indicated that the one acre that included the old Merryman home place, described in the Merryman fiduciary deed and excepted from the Rogers fiduciary deed, was actually located on the Rogers tract.

At trial on March 7, 2011, appellee testified that she was an eight-year employee at the Van Buren County Assessor's Office and currently owned approximately eleven acres whose chain of title originated with the 1994 fiduciary deeds. She said that she and her former husband had purchased a tract of land, which she thought was approximately forty acres with one acre carved out, from the Rogerses, who had acquired the land from the Rather estate. She said that at the time of purchase she had no idea if the road ran north and south, and she and her husband had the survey done in 1999 to know where their stakes were. She testified that she believed she owned acreage on the west side of the road because the survey showed their parcel to be only thirty-three acres on the east side of the north-south county road. The survey further showed the one-acre tract with the Merryman house to be located, as described by appellee, "at the bottom of the Northeast of the Northwest of our land," rather than the southwest corner referenced in the fiduciary and Rogers deeds. Appellee said that the house [6]was supposed to have been on the other side of the dirt road. She testified: "I did in fact get that house by deed. . . . I didn't know it was on the land. We were surprised about that. There is a mistake in here somewhere."

Appellee said that she and her husband conveyed a twenty-two-acre tract to the Halls; and that in their 2005 divorce her husband conveyed to her approximately eleven acres, which was left over. Warranty deeds and quitclaim deeds introduced into evidence supported her testimony. Appellee said that she had once visited with a lawyer to correct the acreage problem shown in the survey, but it did not seem worth the trouble—before oil and gas came into play. She testified that she was currently being assessed for the eleven acres and the one acre with the house. She asked that the deed be reformed to award her increased acreage and to change the location of the house property.

Doyle Merryman testified that he was not aware of any mistake regarding the estate of Opal Rather. He stated that he and his brother had challenged probate and subsequently participated in the settlement agreement:

> I was not supposed to divide that eighty-acre tract into equal portions.

The deeds read east and west of the county road. They both said forty acres probably because they assumed there was forty acres. Nobody ever surveyed that land. It wasn't surveyed at that time. There was an assumption that it was to be forty acres.

He said that as far back as he could remember, the county road, roughly in the middle, was always the dividing line, and that he thought it ran along the forty-acre line. He agreed that the house he was supposed to receive as part of the settlement agreement was described in the deed as being in the southwest corner of the east forty. He testified:

> The mixup is between a quarter and corner as to what we have. The house was placed in the Southwest corner because that basically is where I thought, where the actual house was located, that's where I thought the corner was. It always has been. That's where I grew up. I grew up there, that's where it always has been. I would assume that the house being on that side of the road, that also marks the corner of the forty, that's why I was supposed to get it. It was probated to me and my brother. On paper I did actually get the house property. I have a deed for it and I pay taxes on it.

Doyle Merryman also said that at the time of the settlement agreement, he thought the county road was approximately on the "forty line," with the property south "the same way. It's the same line. That's why it's in there less and excepted this house, that runs right along the county road and called it in the Southwest corner of that forty." He testified that the actual intent was to grant "everything east of the road, less and except my family's house."

James Merryman testified that his parents built the house on the one-acre parcel in 1962, replacing the house where he had been born, but that he had never owned the home or had an interest in it. He remembered splitting the land and dividing it along the road "because that's where we had always thought the property line was," with "forty acres more or less on the west side and forty acres more or less on the right side" as the basis of their agreement. He said that his parents' house on the one acre was carved out of the corner that had always been believed to be in the "northwest quarter of the northwest forty" but that no one really knew because no surveys were made. He said that his parents were living in the house at the time of the agreement and his mother continued to live there until she passed away in 2008.

Edward Morgan, the administrator of the Rather estate at the pertinent times, testified that the settlement agreement pertained to an eighty-acre tract with a one-acre piece of property included in the description. He said that no survey was done and that if the house was actually located at a place other than on the southwest corner referenced in the deed, "it would be a mistake, because that was the intent of the agreement." He said it would make sense that the mistake "was based on the assumption that the county road ran along the forty line by the parties because it's in the corner." He testified that the agreement order itself "says what the parties signed off to be their intent. It was forty acres more or less." He stated that the 2005 survey apparently placed the house on the east side of the road instead of the west side and, again, that it made sense that the parties had assumed the roadway ran along the forty line.

Reformation is predicated upon the maxim, "Equity treats that as done which ought to have been done." *Foster v. Richey*, 192 Ark. 683, 686, 93 S.W.2d 1258, 1259 (1936). Reformation is an equitable remedy that is available when the parties

have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence that agreement. *Lambert v. Quinn*, 32 Ark.App. 184, 187, 798 S.W.2d 448, 449 (1990). Mutual mistake must be shown by clear and decisive evidence that, at the time the agreement is reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. *Id.*

A court may, through reformation, correct the description in a deed where the deed incorrectly reflects the property that the parties intended to be conveyed. *Statler v. Painter*, 84 Ark.App. 114, 119, 133 S.W.3d 425, 428 (2003). As we have explained,

There must be a mistake by both parties, by reason of which both of them have done what neither intended; each must have labored under the same misconception in respect to the terms of the written instrument. *Yeargan v. Bank of Montgomery County*, 268 Ark. 752, 595 S.W.2d 704 (Ark.App.1980). Although a finding of mutual mistake must be supported by clear and convincing proof, the proof need not be undisputed. *Falls v. Utley*, 281 Ark. 481, 665 S.W.2d 862 (1984). Whether mutual mistake warranting reformation occurred is a question of fact. *Turner v. Pennington*, 7 Ark.App. 205, 646 S.W.2d 28 (1983).

*Lambert*, 32 Ark.App. at 187, 798 S.W.2d at 449–50. Although we review traditional equity cases de novo, the test on review is not whether we are convinced that there is clear and convincing evidence to support the trial judge's findings but whether we can say that the findings are clearly erroneous. *Statler*, 84 Ark.App. at 119, 133 S.W.3d at 428. We defer to the superior position of the trial judge to evaluate the evidence. *Akin v. First Nat'l Bank of Conway*, 25 Ark.App. 341, 345, 758 S.W.2d 14, 17 (1988).

Here, the county road was not located on a north-south dividing line between two tracts of forty acres, more or less, as described in the deeds. No survey was performed at the time of the settlement agreement, and subsequent surveys showed an unequal division of the land on each side of the county road. There was significant disparity in the amount of acreage on each side of the county road, resulting in appellants receiving approximately forty-five acres on the west and appellee's predecessor in title receiving thirty-four acres on the east. The location of the one-acre tract and Merryman home was not as described in the deeds, resulting in appellee's predecessor in title receiving the one acre and home on the east side of the county road, which was to have been distributed to Doyle and Ronda Merryman. The circuit court found that a mutual mistake had occurred and reformed the deeds of all parties to divide the property along the true forty-acre line, restoring the home place and acreage as the parties and predecessors in title had intended.

The circuit court's finding of a mutual mistake is not clearly erroneous. Accordingly, we affirm the order of reformation.

Affirmed.

VAUGHT, C.J., agrees.

ROBBINS, J., concurs.