MASON *v.* JARRETT.

4-9307                                                  234 S. W. 2d 771

Opinion delivered December 18, 1950.

*Claude F. Cooper,* for appellant.

*Percy A. Wright* and *Ed B. Cook,* for appellee.

ED. F. McFADDIN, Justice. This is an appeal by the defendants (Mason and Wright) seeking to reverse a judgment rendered against them in an action of ejectment.

In June, 1949, appellee, as plaintiff, filed this action, claiming to be the owner and entitled to the possession of "all that part of the *Northeast Quarter* of section 23.[1] . . . lying north of the drainage canal in . . . Mississippi County, Arkansas." He alleged that he ac-

---

[1] Italics our own. We have omitted the Township and Range and other portions of the description not in issue.

quired title by duly recorded deed from Z. B. Harrison, dated March 13, 1943, and that the defendants had wrongfully held possession since February, 1948. The defendants, being duly summoned, filed a pleading entitled "Demurrer," asserting that the plaintiff had failed to file any muniments of title. This pleading does not appear to have been presented to the Court; but on January 3, 1950, plaintiff filed an amended complaint, describing the land as being in the *Northwest* Quarter of section 23, instead of the *Northeast* Quarter, as stated in the original complaint. The plaintiff deraigned his title: (a) State to Z. B. Harrison; (b) Z. B. Harrison to plaintiff, by said deed of March 13, 1943; and (c) Z. B. Harrison to plaintiff by correction deed of July 23, 1949. The amended complaint also repeated the allegations as to plaintiff's right to possession and defendants' wrongful withholding.

After overruling defendants' motion to dismiss—subsequently to be discussed—the Court tried the case to a jury on January 27, 1950; and allowed the plaintiff to introduce in evidence his said correction deed of July 23, 1949—subsequently to be discussed. From a jury verdict and judgment for plaintiff, defendants bring this appeal.

I. *Motion to Dismiss.* Appellants claim that the Court erred in denying their motion to dismiss. They say that they were summoned to defend an action involving the *Northeast* Quarter of section 23, and that when plaintiff amended his complaint to describe the *Northwest* Quarter of section 23 he, in effect, commenced a new action, and they were entitled to be brought in by a new process. We hold that the trial court ruled correctly in denying the motion to dismiss.

Section 27-1160, Ark. Stats. (1947) says:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings . . . by correcting a mistake in the name of a party, or a mistake in any other respect, . . ."

The amended complaint, insofar as a change of description from *Northeast Quarter* to *Northwest Quarter,* was merely the correction of a mistake. In *Smith* v. *Halliday,* (Ark.) 13 S. W. 1093,[2] there was involved an ejectment action in which the trial court had granted leave to plaintiff to correct a mistake in the description of the lands; and of such permission Mr. Justice HEMINGWAY said:

"That the court can, and in the exercise of its discretion should, grant such leave, it requires no argument to establish. Where the ends of justice require it, the amendment should be granted upon terms that will prevent surprise and injustice. . . . The amendment tendered no new issue but simply substituted a correct for an incorrect description of the property in controversy . . ."

In the case at bar the correction of the description resulted in no loss of rights to either side, so the Court correctly denied the motion to dismiss.

II. *The Deed of July 23, 1949.* After filing this action, plaintiff learned that his said deed of March 13, 1943, contained a misdescription of the lands, so he obtained a correction deed dated July 23, 1949, which correctly described the lands and also recited:

"This quitclaim deed is executed for the purpose of correcting a quitclaim deed executed by these same parties on the 13th day of March, 1943, in which deed the description set forth the NORTHEAST QUARTER when it should have been the NORTHWEST QUARTER of said Section, Township, and Range."

By formal pleading, and also seasonably in the course of the trial, the defendant objected to the introduction of the said correction deed. The trial court admitted the deed; and the appellants, in claiming error, rely on the well known rule: "A title acquired after the commencement of an action of ejectment will not

---

[2] The opinion is not contained in the Arkansas Reports, but may be found in the Southwestern Reporter. In Vol. 54, Page XII of the Arkansas Reports, this case is listed as one omitted from Vol. 53 of the Arkansas Reports.

support the action." The defendants argue that the plaintiff had no title until he obtained the correction deed. They cite and rely on *Percifull* v. *Platt*, 36 Ark. 456, and *Dickinson* v. *Thornton*, 65 Ark. 610, 47 S. W. 857, in each of which cases the plaintiff, after filing an action in ejectment, obtained, and attempted to assert, a title which he did not previously possess. Those cases enunciated and applied the well known rule, just stated: but in the case at bar we are not concerned with a *new title*, but with a *correction deed*, which is the confirmation of a title already possessed. A correction, or reformation, deed does *now* perfectly what was done *then* imperfectly. In 45 Am. Jur. 591,[3] in discussing the effect of a decree reforming an instrument, the rule is stated:

"Operation and Effect; Relation Back. Upon the reformation of an instrument, the general rule is that it relates back to, and takes effect from, the time of its original execution, especially as between the parties thereto and as to creditors at large and purchasers with notice. Accordingly, upon the correction by the court of a deed which defectively describes premises the equitable title to which is in the vendee, his legal title relates back to its execution and delivery."

In *Beckius* v. *Hahn*, 114 Neb. 371, 207 N. W. 515, 44 A. L. R. 73, the Supreme Court of Nebraska, in deciding that the effect of a reformation *deed*[4] was the same as that of a reformation *decree*, said:

"Certainly the parties may do voluntarily that which a court of equity would have compelled them to do. The parties, then, having voluntarily reformed the

[3] See also 53 C. J. 1055. An interesting case is that of *Stockley* v. *Cissna*, 119 Fed. 812, in which the Circuit Court of Appeals of the Sixth Circuit, in an opinion by Judge Lurton, held that a grant of land by the State of Tennessee related back to the date of the entry, and was sufficient to support an action of ejectment for the land granted, although such action was commenced during the time of the entry and before the date of the grant.

[4] In 18 C. J. 217 the holdings are summarized in this language:

"Where there is no fraud and the rights of third persons have not intervened, and equity could have reformed the deed, it may be amended by a subsequent instrument so as to effectuate the intention of the parties. This general rule applies to a mistake in the description, . . ."

deed, the effect is as though the original deed had expressed the intention of the parties.''

To the same effect is the case of *Polk* v. *Carey*, 247 S. W. 568, in which one of the Texas Courts of Civil Appeals used this language in regard to a correction deed:

''. . . the second deed, with its particular description of the land, conveyed, as between the parties thereto, related back and became effective as of the date of the first deed. A second deed can be looked to in aid of a description given in a prior deed.''

So, in the case at bar, the plaintiff actually owned the lands involved—though under an incorrect description—before he filed this action; and the correction deed, when executed, related back [5] to the plaintiff's original deed of March 13, 1943, and was not a new or after-acquired title within the rule stated in *Percifull* v. *Platt* (*supra*) and *Dickinson* v. *Thornton* (*supra*). Appellants' assignment is without merit.

III. *Sufficiency of the Evidence.* Finally, appellants say that there was no evidence that the lands involved were in the State of Arkansas. We find this contention to be without merit. The lands here involved, fronting 115 feet on the Highway, were situated north of a drainage ditch (called ''State Line Ditch''), and south of the boundary line between the States of Arkansas and Missouri. The fact that the drainage ditch was called ''State Line Ditch'' caused some people to believe that it was, in fact, located on the State line. But it was shown that at the locality here involved the ditch was constructed 115 feet south of the State line. The Drainage District specifications, so stating, were in evidence; one of the workmen who constructed the ditch so testified; an engineer who surveyed the disputed lands so testified, and his plat is in the transcript. In short, there is abundant evidence to support the verdict to the effect that the lands are in Arkansas. Evidently the jury

---

[5] In 15 American Decisions 246, following the case of *Jackson* v. *Ramsay*, 3 Cowen 75, there is a splendid note on the "relating back" cases. See also *Laurissini* v. *Corquette*, 25 Miss. 177, 57 American Decisions 200.

152

accepted appellee's insistence that the defendants were "squatters" who, during high water, anchored a house boat on the bank of the drainage ditch, and then undertook to defend their possession, not by strength of title in themselves, but by attempting to find some flaw in plaintiff's title.

Affirmed.