*2011 Ark. App. 630*

**Ronald E. MAULDIN and Pamela D. Mauldin, Appellants**

v.

**Danny SNOWDEN, Sheila Snowden, Darrell K. Flory, Martha K. Flory, Petrohawk Operating, Inc., Chesapeake Exploration, LLC, Midland Resources, Inc., Mid Continent Title & Leasing Consultants, Inc., and JayJon, Inc., Appellees.**

No. CA 11–204.

Court of Appeals of Arkansas.

Oct. 26, 2011.

Robert Milton Honea, Fort Smith, for appellant.

Mark A. Moll and Joshua T. Carson, Fort Smith, David Lee Eddy, Russellville, for appellee.

JOHN B. ROBBINS, Judge.

This is a case involving the mineral rights to two tracts of property in Van Buren County. The appellants are Ronald E. Mauldin and Pamela D. Mauldin, and they own title to the surface of both tracts. The Mauldins filed a complaint against appellees Danny Snowden, Sheila Snowden, Darrell K. Flory, Martha K. Flory, Petrohawk Operating, Inc., and Chesapeake Exploration, LLC, requesting a judgment against the defendants for title in the minerals. After a bench trial, the Van Buren County Circuit Court entered an order and an amended order in favor of the defendants, thus denying the Mauldins' claim to the mineral rights. The Mauldins now appeal from those orders, and we affirm.

Our standard of review on appeal from a bench trial is not whether there was substantial evidence to support the finding of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc.,* 370 Ark. 220, 258 S.W.3d 374 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *See id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Duke v. Shinpaugh,* 375 Ark. 358, 290 S.W.3d 591 (2009).

The historical facts of this case are as follows. On April 1, 1992, Danny Snowden and Sheila Snowden acquired title in fee simple absolute, surface and minerals, to the South 1/2 of the Southwest 1/4 of Section 17, Township 11 North, Range 15 West, in Van Buren County. On March 8, 1993, the Snowdens executed and recorded a mineral deed conveying their rights to the minerals under that property to Cenark Oil and Gas Company, a corporation owned by the Snowdens.

On September 3, 1997, the Snowdens acquired title to the surface only of the Northwest 1/4 of the Southwest 1/4 of Section 17. At the time the Snowdens acquired title to the surface of that property, Cenark held record title to one-half of the underlying minerals. Also on September 3, 1997, the Snowdens executed and recorded a warranty deed conveying the South 1/2 of the Southwest 1/4 and the Northwest 1/4 of the Southwest 1/4 of Section 17 to Darrell K. Flory and Martha A. Flory. The warranty deed did not reflect a reservation of the mineral interests.

On November 20, 2003, the Florys executed and recorded a warranty deed conveying these two tracts of property to the appellants herein, the Mauldins. As with the prior conveyance between the Snowdens and Florys, the warranty deed between the Florys and Mauldins did not reflect a reservation of mineral interests.

On November 18, 2004, the Snowdens, in their capacity as officers of Cenark, caused Cenark to execute and record a mineral deed conveying Cenark's mineral interest in the two tracts of land to the Snowdens. On February 22, 2005, the Snowdens executed an oil and gas lease that included both tracts of land, and on December 20, 2005, that lease was assigned to Chesapeake Exploration. On May 31, 2006, the Snowdens executed and recorded a mineral deed conveying all of their mineral interests in the subject properties to JayJon, Inc.

The Mauldins filed their complaint against the appellees on October 20, 2008. In their complaint, the Mauldins claimed that the execution and recording of the 2004 mineral deed from Cenark to the Snowdens triggered the after-acquired title statute, Ark.Code Ann. § 18–12–601 (Repl.2003), which provides:

> If any person shall convey any real estate by deed purporting to convey it in fee simple absolute, or any less estate, and shall not at the time of the conveyance have the legal estate in the lands, but shall afterwards acquire it, then the legal or equitable estate afterwards acquired shall immediately pass to the grantee and the conveyance shall be as valid as if the legal or equitable estate had been in the grantor at the time of the conveyance.

The Mauldins requested that the trial court enter an order declaring them to be the owners of the mineral rights underlying the two tracts they acquired from the Florys. Alternatively, the Mauldins asserted breach of warranty against the Snowdens and Florys, and prayed for

judgment for the fair market value of the minerals under the two parcels. Finally, the Mauldins asked for an order ejecting all of the defendants from the properties and extinguishing any of their claims. After the defendants answered the complaint, the Mauldins filed an amended complaint on February 6, 2009, wherein they named additional defendants including JayJon, Inc.

On February 26, 2009, Chesapeake Exploration filed an answer to the amended complaint, a counterclaim, and a cross-claim against the Snowdens and JayJon for breach of warranty of title. On March 11, 2009, the Florys filed a counterclaim against the Mauldins, wherein the Florys asserted:

(3) The defendants, Darrell K. Flory and Martha A. Flory, and the plaintiffs knew that the Florys likely did not own the mineral rights to the property.

(4) The above-described warranty deed [between the Florys and Mauldins] contained warranties of title. However, the warranties of title should have only been applicable to the surface of the property, and not the mineral rights.

(5) Due to the mutual mistake of the parties to the deed, the above-described warranty deed did not contain the parties' true intentions regarding warranties of title to the mineral interest associated with the property being conveyed.

WHEREFORE, the defendants, Darrell K. Flory and Martha A. Flory, ask that the above-described deed be reformed to modify the warranty language to exclude any warranties as to mineral ownership, and for all other proper relief.

On May 17, 2010, the Snowdens filed a cross-claim against the Florys, asking that the deed from the Snowdens to the Florys be reformed to convey only surface rights because neither party intended for the deed to convey mineral interests, and asserting that the failure to limit the deed to a conveyance of the surface only was the result of a mutual mistake common to the Snowdens and Florys.

A bench trial was held on July 16, 2010. On November 18, 2010, the trial court entered an order finding that the Florys' counterclaim for reformation and the Snowdens' cross-claim for reformation should be granted. The order recites:

Based on evidence presented in the pleadings and at trial, it is the Court's opinion that the transaction from the Defendants Snowden to the Cross-Defendants Flory of the land by Warranty Deed without reservation was a mutual mistake and the deed should be reformed to reflect that mistake. Both the Snowdens and the Florys agreed that the transaction would convey the surface interests only, and that no minerals or mineral interests would be conveyed as part of the transactions.... Judgment in favor of the defendants is GRANTED in this case, based on the foregoing reasons. The Deed between Defendants Snowden and Flory should be reformed to reflect a reservation of mineral interests.

The Mauldins filed a timely notice of appeal from the trial court's order, and on December 29, 2010, the Mauldins filed a motion for reconsideration pursuant to Ark. R. Civ. P. 60(a). On January 4, 2011, the Florys answered the Snowdens' motion for reconsideration, asking the trial court to clarify that there was also a mutual mistake in the transaction between the Florys and Mauldins, and asserting that the deed between those parties should be reformed. On January 26, 2011, the trial court entered an amended order that was materially identical to the first order with the additional finding that there was also a mutual mistake in the transaction between the Florys and Mauldins, and that that

deed should also be reformed to reflect a reservation of the mineral interests. The Mauldins timely appealed from the trial court's amended order.

Danny Snowden was the first to testify at the bench trial. Mr. Snowden recalled that during the 1997 transaction with the Florys, he told Mr. Flory that the mineral rights had been severed and Mr. Flory understood from their conversation that he was not getting the mineral rights. Mr. Snowden testified that he did not intend for the mineral rights to go with the property, and that the Florys gave no consideration for the mineral rights. Mr. Snowden testified that he began assessing the mineral rights separate from the surface rights before he sold the property to Mr. Flory, and that he has continued to assess and pay taxes on the mineral rights since that time. Mr. Snowden asked the court to reform the Snowdens' deed to the Florys to show that the minerals did not go with the property, and that only the surface rights were conveyed.

Mr. Flory testified that he bought the property from the Snowdens in 1997 for the purpose of cutting and selling timber. Mr. Flory maintained that Mr. Snowden told him that the minerals did not convey, and Mr. Flory stated that he never thought he owned the minerals. Mr. Flory stated that he purchased the property at issue for $54,000, sold timber for $9000, and subsequently sold the property to the Mauldins for $34,000. Mr. Flory testified that, prior to closing on the conveyance to the Mauldins, he told Mr. Mauldin that he did not own the minerals and did not know who owned the minerals, and that Mr. Mauldin advised that he would check into it. Mr. Flory stated that there was not any doubt that he did not own the minerals, and that he recalled receiving a letter from Mr. Mauldin after closing wherein Mr. Mauldin acknowledged that he (Mr. Mauldin) did not own the minerals. While Mr. Flory gave the Mauldins a warranty deed with no reservations, he said that he would not have signed the deed had he known he was warranting title to the minerals. As far as Mr. Flory was concerned, the warranty deed to the Mauldins was a mistake.

Mr. Mauldin testified that during his conversations with Mr. Flory, Mr. Flory never told him that he did not have the mineral rights. Mr. Mauldin stated that he thought he owned the mineral rights until he unsuccessfully attempted to execute a mineral lease sometime later. Mr. Mauldin stated that he bought the property for hunting and leisure, and he acknowledged that he probably would have bought the property without regard to the minerals, although he suggested that he probably would not have paid as much. Mr. Mauldin stated that he did not make any investigation as far as the minerals were concerned prior to buying the property. He did acknowledge, however, that the lady who closed the transaction indicated at the closing that, for at least one of the two tracts, the minerals were not part of the conveyance.

In this appeal, the Mauldins challenge the trial court's ruling that they are not entitled to ownership of the mineral interests in the subject properties. The Mauldins' first argument is that the trial court erred in refusing to enforce Ark.Code Ann. § 18–12–601 (Repl.2003), which is the after-acquired title statute. Appellants contend that the undisputed facts in this case established that the after-acquired title statute applies and that pursuant to that statute, record title to the minerals passed to the Mauldins immediately upon recording of the 2004 mineral deed from Cenark to the Snowdens. The Mauldins rely on *Peterson v. Simpson*, 286 Ark. 177, 690 S.W.2d 720 (1985), where our supreme court said that in the United States, the

recording system is the only method we have for keeping track of the ownership of mineral rights. When fairness to individual parties and preservation of a viable recording system are in conflict, preservation of the recording system, being more important, must control. *Id.* The Mauldins submit that the preservation of a viable recording system must prevail over a subjective inquiry into what the parties intended, and that the decision of the trial court must therefore be reversed.

The Mauldins' remaining two arguments are that the trial court erred in awarding an equitable remedy on the facts of this case and, more particularly, that the proof did not support the trial court's finding of reformation. Appellants cite *Lawrence v. Crafton,* 2010 Ark. App. 231, 374 S.W.3d 224, where we discussed the equitable remedy of reformation and wrote:

> Reformation is an equitable remedy that is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence the agreement. A mutual mistake is one that is reciprocal and common to both parties, each alike laboring under the same misconception in respect to the terms of the written instrument. A mutual mistake must be shown by clear and decisive evidence that, at the time the agreement was reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. Whether a mutual mistake warranting reformation occurred is a question of fact. Even in reformation cases, where the burden of proof is by clear and convincing evidence, we defer to the superior position of the trial judge to evaluate the evidence, and the proof need not be undisputed.

*Lawrence,* 2010 Ark. App. 231, at 2–3, 374 S.W.3d at 228.

The Mauldins assert that, in this case, the equities are against the Snowdens. Appellants maintain that the proof established that the Snowdens lacked diligence beginning in 1997 when they executed a warranty deed to the Florys with knowledge that they did not own the minerals. Appellants contend that the Snowdens could have easily avoided the problem they now confront by simply making sure they were not conveying something that they knew they did not own. Appellants further assert that the Snowdens again displayed a lack of vigilance by executing the mineral deed from Cenark back to themselves in 2004, thereby triggering application of the after-acquired title statute. The Mauldins contend that the Snowdens could have protected themselves by not executing that mineral deed or by filing a reformation claim sometime earlier than 2010. Appellants argue that equity is not available to those who have not acted with reasonable diligence, and thus it was not available to the Snowdens under these circumstances.

The Mauldins also contend that reformation should not have been granted on these facts because, at most, there was a unilateral mistake by only the Snowdens regarding their transaction with the Florys. Appellants assert that Mr. Flory's testimony was garbled and equivocal on the issue of whether he thought he was acquiring the mineral rights from the Snowdens when the 1997 deed was executed. Appellants argue that, because Mr. Flory never formed any particular intent on that issue, there was no mutual mistake and thus a lack of evidence to support a claim for reformation.

We hold that the trial court's decision reforming both the 1997 deed from the Snowdens to the Florys and the

2003 deed from the Florys to the Mauldins, to reflect the reservation of mineral interests, was not clearly erroneous. Reformation occurs when an instrument does not reflect the terms intended by the parties to the instrument, and the court revises the terms of the instrument to reflect the parties' intent. *Roberson Enterprises, Inc. v. Miller Land & Lumber Co.*, 287 Ark. 422, 700 S.W.2d 57 (1985). In the present case it, is evident that Mr. Snowden knew in 1997 that he had no mineral rights to convey because he had previously conveyed his mineral interests to Cenark, and Mr. Snowden testified that he did not intend for the mineral rights to convey to the Florys. Moreover, Mr. Snowden testified that no consideration was given for the mineral rights and that he told Mr. Flory that Mr. Flory was not receiving the mineral rights. Contrary to appellants' argument, Mr. Flory's testimony was consistent with that notion because he stated that he never thought he owned the minerals and that "I am sure Mr. Snowden said they didn't convey." Moreover, Mr. Flory testified that, when he conveyed the property to the Mauldins in 2003 (at a far lower purchase price than Mr. Flory paid in 1997), he told Mr. Mauldin that he did not own the minerals and that they both understood that the mineral rights did not convey. While Mr. Mauldin disputed that fact, this was a credibility decision for the trial court. There was testimony from which the trial court could conclude, by clear and decisive evidence, that mutual mistakes tainted both conveyances and that in each case the respective parties intended a reservation of the mineral rights.

Contrary to the Mauldins' contention on appeal, the after-acquired title statute did not operate to convey them the mineral rights when Cenark conveyed its mineral rights to the Snowdens in 2004. Our supreme court in *Mason v. Jarrett*, 218 Ark. 147, 234 S.W.2d 771 (1950), held

that, upon the reformation of an instrument, the general rule is that it relates back to, and takes effect from, the time of its original execution, especially as between the parties thereto and purchasers with notice. Inasmuch as the Mauldins were parties to the 2003 deed that was reformed to reserve mineral rights, its reformation relates back to the date of the deed's execution. Once the deeds were reformed, there was no mineral title to pass under the after-acquired title statute. Therefore, the trial court committed no error in denying the Mauldins' claim to the mineral interests.

Affirmed.

WYNNE and GLOVER, JJ., agree.