

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV–15–500

|  |  |
|---|---|
|  | **Opinion Delivered** December 16, 2015 |
| KENNETH ELSLEGER AND GLORIA ELSLEGER<br>APPELLANTS | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. CV-2010-796-1] |
| V. | HONORABLE LYNN WILLIAMS, JUDGE |
| JEFF VAN RUNSICK, TONYA RUNSICK, AND WHITE COUNTY TITLE CO.<br>APPELLEES | REVERSED AND REMANDED |

**BRANDON J. HARRISON, Judge**

In February 2015 the White County Circuit Court found Jeff Van Runsick and Tonya Runsick to be the owners of a certain mineral interest, granted reformation of a correction deed, and awarded attorney fees following a bench trial. Kenneth and Gloria Elsleger appeal the circuit court's decision. Because we hold that the circuit court erred by going beyond the scope of the legal purpose that a correction deed serves by adding a mineral reservation or exception, we reverse and remand for further proceedings consistent with this opinion.

I. *Background and Procedural History*

Jeff Van Runsick and Tonya Runsick sold Kenneth and Gloria Elsleger a home and five acres near Searcy, Arkansas in 2007. A deed was recorded in White County on 11 December 2007 (Deed I). Deed I contained the following language:



> **RESERVING AND RETAINING, HOWEVER,** unto the **GRANTORS** all oil, gas and minerals and all oil, gas and mineral rights and interests, and subject to all prior and/or existing oil and gas leases, if any, and subject to all prior reservations and conveyances of oil, gas or minerals or right or interests therein. This conveyance conveys unto the **GRANTEES** no oil, gas or minerals and no oil, gas or mineral rights or interests.

The Runsicks executed two more deeds several months later at the request of White County Title Company. Although it appears from the trial testimony that the two additional deeds (Deeds II and III) were executed by the Runsicks on the same day, the deeds were recorded at different times. What we call Deed II is titled "Warranty Deed" and was recorded on 26 February 2008. In it, Tonya Runsick's name was correctly stated as "Tonya Runsick" and the grantors (the Runsicks) purportedly conveyed all the interest they owned in the property (what we call Blackacre in this opinion) to the Elslegers. After the granting clause, Deed II contained this statement:

> ★★GRANTORS shall retain and reserve all oil, gas, and mineral rights they hold on the above described property, less and except any previous reservations of oil, gas, and minerals, if any.

The Elslegers did not sign Deed II; it was signed only by the Runsicks.

A few weeks later, on 14 March 2008, what we call Deed III was recorded. It is titled "Correction Deed." Deed III did not contain any language about any mineral interest, and it was signed by Jeff Van Runsick and Tonya Runsick as grantors. Deed III was also signed by the Elslegers as grantees.

On 2 December 2008, Fatima Hoggard, an employee of White County Title, filed a Scrivener's Affidavit. Her affidavit stated that the correction deed (Deed III) "contain[ed] an unintentional scrivener's error in the absence of the mineral reservation." According to

Hoggard's affidavit, this "mineral reservation" was intended to appear after the legal description in Deed III:

> *GRANTORS shall retain and reserve any oil, gas, and mineral rights they hold on the above described property, less and except any previous reservations of oil, gas, and minerals, if any.

In January 2009, shortly after the Scrivener's Affidavit was filed, the Elslegers requested royalty payments from Chesapeake Operating, Inc. (Chesapeake). But Chesapeake objected to making royalty payments to either the Elslegers or the Runsicks. A 2010 letter from Chesapeake, which the court accepted as evidence during the bench trial, asked the parties to stipulate what interest each was claiming. Chesapeake noted that Deed I conveyed an undivided ½ surface interest to the Elslegers. It also observed that Deed II was a warranty deed and that it covered the property. In Chesapeake's view, Deed II's language dealing with the mineral-reservation language could be construed in two ways: either (1) a reservation of all minerals; or (2) a reservation of only ½ of the minerals and conveyance of the ½ of the minerals previously reserved. Chesapeake then noted that Deed III provided that the "conveyance is subject to all reservations of record, although it does not contain a reservation of minerals itself nor is it limited to an undivided ½ interest." It remarked that both the grantors (Runsicks) and the grantees (Elslegers) executed the correction deed. And, for its own limited purposes, the letter showed the property's mineral interest to be vested in the Elslegers. If the Runsicks claimed no mineral interest in the property, Chesapeake asked that they execute a quitclaim deed to the Elslegers covering the disputed mineral interest and oil–and–gas rights.

The Runsicks filed their complaint in September 2010 against the Elslegers and Chesapeake seeking reformation of Deed III, which contained no mineral-rights language. The Runsicks alleged that it was by mutual mistake that the correction deed (Deed III) failed to include an exclusion or reservation of the mineral interest, because the correction deed was "only and solely for the purpose" of correcting Tonya Runsick's name, as evidenced by the Scrivener's Affidavit.

The Elslegers, in turn, filed a third-party complaint for slander of title against White County Title Company. Chesapeake stipulated that it would cause all past and future royalty payments to be paid to whichever party prevailed after entry of a final order disposing of the proceeding.

A bench trial occurred in February 2015. The 2007 operative real-estate contract was entered into evidence during trial. The contract had three possible provisions that relate to mineral rights: Paragraph 8, Paragraph 12, and Paragraph 27. Paragraph 8 stated that **"SUCH CONVEYANCE SHALL INCLUDE ALL MINERAL RIGHTS OWNED BY SELLER CONCERNING AND LOCATED ON THE PROPERTY, IF ANY, UNLESS OTHERWISE SPECIFIED IN PARAGRAPH 27."** (emphasis in original). The referenced paragraph, Paragraph 27, contained no statement about mineral rights and stated that the real estate contract supersedes any other contract or agreement. In contrast, Paragraph 12 stated, "Mineral Rights do not convey with this property." Paragraph 12 was titled "Fixtures And Attached Equipment."

During the bench trial, the Runsicks testified that it was always their understanding and intention to retain all the mineral interest in the property, and they had never spoken

to the Elslegers directly regarding the minerals. Phyllis Fitzgerald, the real-estate agent who had represented both parties in the transaction, testified that she felt that it was "clear from all communication, all documents" that it was the intent of the Runsicks to retain the minerals and the intent of the Elslegers to not get the minerals.

A co-owner of White County Title, Mitzi Hannah, also testified for the Runsicks. Hannah testified that White County Title became involved at the request of ENG Lending to do a refinance of the property for the Elslegers. The Elslegers apparently realized there were issues with Deed I when they tried to refinance the property in early 2008, and White County Title Company received a work order from the Elslegers' lender for the purpose of clearing up title to the property. The title problem was two-fold: (1) Deed I reflected one of the grantor's names (Tonya Runsick) as Tonya Van Runsick, not Tonya Runsick, and (2) it reflected that the grantors (the Runsicks) had conveyed only a one-half interest in Blackacre to the grantees (the Elslegers). She explained that White County Title prepared Deed II (warranty deed) with the purpose of conveying "all the interest in the property" and prepared Deed III (correction deed) "to correct the last name from Van Runsick to Runsick." Hannah agreed that the Runsicks signed the deeds "to help the Elslegers clear their title so . . . the chain of title could be very clear." Hannah testified that Jeff Runsick later called and complained that the deed had done away with his mineral rights. Hannah also said that she felt that "Mr. Runsick has his mineral rights," but she agreed that they tried to help him. White County Title, Hannah explained, tried to "help out" the Runsicks by filing the December 2008 Scrivener's Affidavit. It also tried to get the Elslegers to sign

another correction deed containing a mineral reservation in favor of the Runsicks, but the Elslegers refused to sign the proposed correction deed.

The Elslegers moved to dismiss the Runsicks' complaint, arguing that the Runsicks had failed to show mutual mistake by clear and convincing evidence and that "all prior negotiations are merged into a deed and that warranty deed and the subsequent correction deed make it very clear . . . that the deed on its face, the correction deed, shows the minerals were not reserved." The court denied the Elslegers' motion.

The Elslegers then presented their side of the story. They testified that Fitzgerald, who had represented them (and the Runsicks) during the real-estate transaction, told them that the minerals conveyed with the house and that it was always their understanding that they were the owners of the property's mineral interest. They also called several other witnesses, whose testimony supported the Elslegers' or whose testimony was cumulative and reflected what had already been said during the Runsicks' case in chief. At the close of the evidence the Elslegers renewed their motion to dismiss, and the court denied it.

The circuit court took proposed findings of fact and conclusions of law in lieu of closing arguments, eventually adopting the Runsicks' proposed order. An 18 February 2015 judgment was entered, and it disposed of the Runsicks' claims against the Elslegers and Chesapeake. The judgment specifically granted the Runsicks' request for reformation, stating in part:

> 19. The case in hand the testimony of both parties was that they signed the real estate agreement and that it was the agreement of the parties.
>
> 20. That the first two deeds included the mineral reservation, and that due to an error by the scrivener, a mineral reservation was not included in the correction deed.

. . .

26.   That a similar factual case has already been tried in Van Buren County Arkansas, the case is cited as *Lawrence v. Barnes*, 2010 Ark. App. 231, 374 S.W.3d 224 (2010), wherein the outcome was favorable to the party who was identically positioned as [the Runsicks][.]

. . .

28.   The Court concludes that the intent of the party by their actions and the documents they have signed was for the [Runsicks] to reserve the minerals and retain ownership of the mineral interest.

29.   Based upon the evidence presented in the trial of this case, the Court finds that the parties in this transaction intended for the correction deed to accurately reflect the intent of the parties, and that by mutual mistake it did not, as such it is reformed to include a mineral reservation as set out below:

★GRANTORS shall retain and reserve any oil, gas, and mineral rights they hold on the above described property, less and except any previous reservations of oil, gas, and minerals, if any.

30.   The court finds that Jeff Van Runsick and Tonya Runsick to be the owners of the minerals underlying the property set out herein, and that separate defendant, Chesapeake Exploration, LLC, should therefore honor the reformed deed and to pay any and all royalties that are due pursuant to the interest owned by Plaintiffs.

The circuit court later dismissed the Elslegers' complaint against White County Title and entered an order awarding the Runsicks attorney fees.   The Elslegers have timely appealed from all these orders.

II. *Standard of Review*

We review reformation cases de novo.   *Stalter v. Gibson*, 2010 Ark. App. 801, 379 S.W.3d 710.   But we do not reverse unless the circuit court's findings were clearly erroneous.   *Id*.   A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with a definite and firm

7

conviction that a mistake has been committed. *L & L Energy Co. v. Chesapeake Exploration, LLC*, 2010 Ark. App. 422, 379 S.W.3d 42. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* A circuit court's conclusions of law, however, are given no deference on appeal. *Id.*

### III. *Discussion*

On appeal, the Elslegers argue two primary points: (1) the circuit court erred in reforming the correction deed, and (2) attorney fees should not have been granted. We hold that the circuit court erred in granting reformation of the correction deed (Deed III). Because we reverse and remand on the first point, we reverse the attorney-fees award too.

Reformation is an equitable remedy that is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to reflect the agreement. *Longing Family Revocable Tr. v. Snowden*, 2013 Ark. App. 81, at 5, 426 S.W.3d 488, 492. A mutual mistake is one that is reciprocal and common to both parties, meaning that each party has the same misconception of the written instrument's terms. *Id.* Whether a mutual mistake warranting reformation occurred is a question of fact. *Mauldin v. Snowden*, 2011 Ark. App. 630, at 8, 386 S.W.3d 560, 565. Even in reformation cases, where the burden of proof is by clear and convincing evidence, we defer to the superior position of the circuit court to evaluate the evidence, and the proof need not be undisputed. *Id.* The mistake of a draftsman, whether he is one of the parties or merely a scrivener, is an adequate ground for reformation if the writing fails to reflect the parties' true understanding. *Statler v. Painter*, 84 Ark. App. 114, 119, 133 S.W.3d 425, 428 (2003).

SLIP OPINION

While a court may, through reformation, correct a deed to reflect the parties' true intentions, the general rule is that a deed includes all prior negotiations and agreements leading up to its execution and delivery. *Bicknell v. Barnes*, 255 Ark. 697, 700, 501 S.W.2d 761, 763 (1973) ("Although agreements respecting the sale of lands are deemed to be merged into a deed subsequently issued, this principle of law does not prevent reformation upon a showing of mutual mistake of fact, a misrepresentation or perpetration of a fraud. Otherwise there could never be a reformation."). This is known as the merger rule. *See generally Croswhite v. Rystrom*, 256 Ark. 156, 162, 506 S.W.2d 830, 833 (1974) ("presumption is that all prior negotiations merge into the instrument of conveyance").

The parties in this case disagree on how to characterize Deed III, which is the "correction deed" that the circuit court reformed. The Elslegers maintain that Deed III is labeled a "Correction Deed" but is actually a warranty deed because it states that the Runsicks "will forever warrant and defend title to said lands against all claims whatever," and because the correction deed does not merely state that it is correcting a name. Deed III, in the Elslegers' view, conveys the property to them without reserving any interests in the minerals to the Runsicks because it was clear that the grantors intended Deed III to vacate, supersede, or replace the earlier deed. In other words, Deed III is the "operative document" in this case. In contrast, the Runsicks view Deed III, not as the "operative document," but as merely an extension of a prior recorded deed.

We disagree with the Elslegers' assertion that Deed III is a warranty deed that conveyed mineral rights to them. Deed III is a correction deed. A correction deed operates as a confirmation of the parties' intentions in executing an original deed; in essence, a

correction deed is a voluntary reformation by the parties. *See Mason v. Jarrett*, 218 Ark. 147, 150, 234 S.W.2d 771, 774 (1950). A correction deed relates back to the filing date of the original deed. *Id.* It allows the parties to correct the situation without court action. The types of mistakes that can be corrected by a correction deed are quite limited, however, usually being confined to fixing an improperly witnessed deed, a description of the property, omission of conditions by mutual mistake, or replacing a destroyed instrument. *See* 26A C.J.S. Deeds § 40. It is settled Arkansas law that parties may use a correction deed to fix a defective description of a property and that it relates back to the filing date of the original deed. *Mason, supra.*

Turning to the instrument in this case, Deed III is titled "Correction Deed." It states:

> That this deed is made to correct the Grantors in a certain Warranty Deed dated December 5, 2007 and filed for record December 11, 2007 in Deed Book 2007, page 17643 made by Jeff Van Runsick and Tonya Van Runsick, husband and wife, Grantors, to Kenneth Elsleger and Gloria Elsleger, husband and wife, Grantees, for valuable consideration certain lands lying in White County, Arkansas. The correct Grantors for the above said Warranty Deed should be Jeff Van Runsick and Tonya Runsick, husband and wife, Grantors. The following described property is situated in the County of White, State of Arkansas, to-wit:
>
> [legal description of Blackacre, which does not differ from the property descriptions in the previous two deeds]
> . . .
> The parties hereto agree to correct the legal description on the Correction Deed and Warranty Deed. TO HAVE AND TO HOLD the same unto the said GRANTEES with the right of survivorship, with all appurtenances thereunto belonging. And GRANTORS hereby covenants with the said GRANTEES that we will forever warrant and defend the title to said lands against all claims whatever, and that said lands are free from all liens and encumbrances.

We find the language in the correction deed insufficient to show that a transfer or a grant of a property interest was intended. Although no particular words of conveyance are required, it is necessary that there be some operative words expressing the fact of a sale or a transfer to convey legal title to interests in land. *White v. Zini*, 39 Ark. App. 83, 88, 838 S.W.2d 370, 372 (1992). The Elslegers have not argued that there are any particular operative words in this instrument that express an intent by the Runsicks to transfer any property interest. We also find it important that Deed III lacks any statement that expresses the parties' intention to rescind the previous deeds. So we disagree with the Elslegers' argument that Deed III was a warranty deed conveying any property interests. Deed III was a correction deed that was intended to correct Tonya Van Runsick's name in Deed I, and it relates back to that deed.

We agree, however, with the Elslegers that the circuit court erred in reforming the correction deed. Allowing a correction deed to effectuate a different mineral exception or mineral reservation than the original deed (Deed I) was legal error. A correction deed that adds reservation or exception language not stated in the original deed burdens the recording system. The same can be said for calling the forgotten mineral reservation or exception a scrivener's error. Adding a reservation or adding a property interest goes beyond the scope of what a correction deed can do. The proper use of a correction deed is narrow in scope and can only be used to correct some facial imperfection in the title, like to correct a defective description of a single property when a deed recites inaccurate metes and bounds or to correct a grantor's name. *See Mason*, *supra*. Our recording system is designed to allow a person to rely on it without using any outside research. The court therefore erred in

SLIP OPINION

changing or adding a mineral reservation or exception because this falls outside the limited scope of what a correction deed can do.

IV.  *Conclusion*

The circuit court's reformation of the correction deed was clearly erroneous because it went beyond the proper scope of a correction deed.  We note that this case is not a declaratory-judgment action or a quiet-title suit.  The Elslegers did not file a cross-claim against the Runsicks.  The only action before the circuit court, and thus before us, is an action for reformation of Deed III by the Runsicks.  Our reversal is limited to that specific cause of action because the reformation of the correction deed, and the related attorney fees, are the only issues before us.  Our opinion does not answer the essential question of who owns the mineral interest because that issue is not before us.

The circuit court's 18 February 2015 judgment order and its 7 April 2015 attorney-fees order are reversed entirely, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

VIRDEN and WHITEAKER, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Tasha C. Taylor* and *Andrew M. Taylor*, for appellants.

*Morgan Law Firm, P.A.*, by: *Nathan S. Morgan*, for appellees Tonya Runsick and Jeff Runsick.

*Dover Dixon Horne PLLC*, by: *Gary B. Rogers* and *Thane J. Lawhon*, for appellee White County Title.