

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-884

| | |
|---|---|
| PANHANDLE OIL AND GAS, INC. | **Opinion Delivered:** April 5, 2017 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CV-13-50] |
| V. | |
| BHP BILLITON PETROLEUM (FAYETTEVILLE), LLC | HONORABLE MIKE MURPHY, JUDGE |
| APPELLEE | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## RAYMOND R. ABRAMSON, Judge

This is the second time this case is before us on appeal. In the first appeal, our court dismissed for lack of a final order. *Panhandle Oil & Gas, Inc. v. BHP Billiton Petroleum (Fayetteville) LLC*, 2016 Ark. App. 376, 499 S.W.3d 667 (*Panhandle I*). We now have a final order; appellant Panhandle Oil and Gas, Inc. (Panhandle), has again appealed three dismissals of their claims against appellee BHP Billiton Petroleum Fayetteville (BHP) from the Faulkner County Circuit Court. On appeal, Panhandle argues that the circuit court abused its discretion in granting two motions to dismiss pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure and that the circuit court erred by dismissing its claims against BHP in the third amended complaint pursuant to Rule 41(b) of the Arkansas Rules of Civil Procedure. For the following reasons, we affirm in part, and reverse and remand in part.

I. Procedural History

As our court noted in *Panhandle I*, the procedural history of this case is rather complex. We provided a recitation of the facts in that opinion and do so again here. In May 2005, Panhandle and separate defendant Chesapeake Exploration, LLC (Chesapeake), entered into a written agreement (the May 2005 Agreement), which stated that Chesapeake would provide wellbore proposals to Panhandle for oil and gas wells in certain identified sections of land in Arkansas where Panhandle owns forty or more net mineral acres and Chesapeake desires to drill a well. Upon receiving a wellbore proposal, Panhandle would then decide if it wanted to participate in the well. Panhandle argues that the obligations of Chesapeake (and its assigns) included two things: (1) submit a well proposal in the event a well was to be drilled; and (2) in the event Panhandle elected to participate in a well, execute a wellbore assignment of any "Retained Interest," which was a defined term. The contract was designed to allow Panhandle to participate in the development of its minerals even though Panhandle itself would not drill the well.

Panhandle claims that, beginning in 2009, it began experiencing significant delays in receiving well proposals and other pertinent information. In an effort to remedy this, Panhandle and Chesapeake entered into another agreement, which is referred to as "the August 2010 Agreement," in order to establish Panhandle as a record working-interest owner in certain listed sections.[1] On January 1, 2011, Chesapeake assigned its remaining interest in the Panhandle Leases to BHP. On January 14, 2013, Panhandle filed suit against

---

[1]Due to a mutual mistake of the parties to the August 2010 Agreement, eight leased sections in which Panhandle owned forty or more net mineral acres were inadvertently omitted from the agreement.

Chesapeake based on Chesapeake's alleged breaches of the May 2005 Agreement and also named BHP as a defendant. In its first amended complaint, filed on June 21, 2013, Panhandle asserted causes of action against BHP for breach of the May 2005 Agreement, specific performance of the same, an equitable accounting, and unjust enrichment.[2] On July 11, 2013, BHP moved to dismiss the causes of action against it in the first amended complaint under Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to adequately state a claim. BHP argued that the first amended complaint sought to extend the May 2005 Agreement beyond its written terms, failed to allege sufficient facts—including an adequate basis to support successor liability—and failed to allege claims for an equitable accounting or unjust enrichment. After Panhandle responded on July 25, 2013, the circuit court heard oral arguments on the issues raised in the motion and response. On October 31, 2013, the circuit court dismissed BHP from the case by stating, without further explanation, that the Rule 12(b)(6) motion was granted.

On November 21, 2013, Panhandle filed its second amended complaint, pursuant to Rule 15(a) of the Arkansas Rules of Civil Procedure, asserting claims against both BHP and defendant Chesapeake. The claims in the second amended complaint were nearly identical to the claims made in the first amended complaint. The only changes were to include various argumentative and conclusory allegations in response to BHP's previous motion to dismiss and to state new claims for reformation in which Panhandle specifically requested that the

---

[2]BHP was not a party to the May 2005 Agreement but was named as a defendant in this lawsuit. In its amended complaint, Panhandle notes that BHP purchased Chesapeake's interest in the Panhandle Leases (after intervening conveyances) on January 1, 2011. By doing so, Panhandle argues, BHP assumed all of Chesapeake's rights and obligations under both the May 2005 Agreement and the August 2010 Agreement.

terms of the May 2005 Agreement and the August 2010 Agreement be expanded in order to impose new contractual obligations on BHP.[3] On December 23, 2013, BHP filed a motion to dismiss Panhandle's second amended complaint pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for the same reasons previously argued to the circuit court. Panhandle filed a written response to the motion, and the circuit court held a hearing on February 24, 2014. On March 17, 2014, the circuit court, without further explanation, granted BHP's motion to dismiss the second amended complaint, finding it had failed to state facts upon which relief could be granted as to BHP.[4]

On April 9, 2014, Panhandle filed its third amended complaint. On May 16, 2014, BHP moved to dismiss or strike this third iteration of Panhandle's claims against it because Rule 41(b) of the Arkansas Rules of Civil Procedure directs that the circuit court's second order of dismissal should be deemed as an adjudication on the merits, and consequently is a dismissal with prejudice. Therefore, BHP argued, the circuit court was barred from taking

---

[3]Panhandle has never alleged that BHP breached the August 2010 Agreement.

[4]Judge Mike Maggio was the original circuit judge on this case. One week after the March 17, 2014 dismissal order, the Arkansas Supreme Court entered an order suspending Judge Maggio from the bench. On July 14, 2014, the Chief Justice of the Arkansas Supreme Court assigned Judge Rob Wyatt of the 11th Judicial Circuit West to hear the case, and the attorneys were notified by the Faulkner County Circuit Clerk of the appointment. In an order filed on August 19, 2014, Judge Wyatt set a motion hearing for Monday, September 22, 2014. Judge Mike Murphy, who had been elected to the 1st Division Circuit Court of the 20th Judicial Circuit in May 2014, was appointed by Governor Mike Beebe in September 2014 to fill the vacancy in the 2nd Division Circuit Court to finish out that term. Therefore, on September 22, 2014, the Chief Justice terminated Judge Wyatt's assignment of the case. Judge Murphy remained the circuit judge assigned to this case until he was sworn in as a judge on our court on January 1, 2017, after being elected to the Court of Appeals, District 2, Position 2, in May 2016.

up Panhandle's reasserted allegations. On June 5, 2014, Panhandle filed a response to BHP's motion; within its response was a request that the circuit court reconsider and vacate the March 17, 2014 dismissal.

On December 29, 2014, after the issue was briefed by both parties, the circuit court, in a letter opinion, granted BHP's motion and denied the request for reconsideration of the dismissal of the second amended complaint that was included in Panhandle's response to the motion to dismiss the third amended complaint. After a settlement, Chesapeake was dismissed in August 2015, and the circuit court entered an order and judgment on September 26, 2016, reflecting the contents of the December 29, 2014 letter opinion. This timely appeal is now properly before our court.

In Panhandle's notice of appeal filed September 29, 2016, Panhandle appeals the two consecutive Rule 12(b)(6) dismissals by former Judge Maggio of claims asserted against BHP, and the Rule 41(b) dismissal by Judge Murphy, all of which became ripe for postjudgment appeal after the combination of Panhandle's dismissal of Chesapeake and the order and judgment entered on September 26, 2016.

Panhandle maintains that in order to properly dismiss its claims against BHP under Rule 12(b)(6), Judge Maggio had to find that Panhandle failed to (1) state general facts upon which relief could have been granted against BHP or (2) include specific facts pertaining to one or more of the elements of one of its claims after accepting all facts contained in the complaint as true and in the light most favorable to the non-moving party. *Bethel Baptist Church v. Church Mut. Ins. Co.*, 54 Ark. App. 262, 265, 924 S.W.2d 494, 496 (1996). Both of the orders dismissing BHP pursuant to Rule 12(b)(6) provide that Panhandle "fail[ed] to

state facts upon which relief can be granted against BHP" but provide no further explanation. The circuit court was not specific in either order as to why or how the pleading was inadequate, though we note this is not required when dismissing a case pursuant to Rule 12(b)(6).

## II. Standard of Review

This court has often stated the standards to be applied in reviewing a dismissal order under Rule 12(b)(6), and we look to the four corners of the complaint. *See Peck v. Peck*, 2016 Ark. App. 423, 502 S.W.3d 553. In reviewing a circuit court's decision on a motion to dismiss under Rule 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994); *Gordon v. Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in the plaintiff's favor. *See Biedenharn v. Thicksten*, 361 Ark. 438, 206 S.W.3d 837 (2005).

In deciding dismissal motions, the circuit court must look only to the allegations in the complaint. *Neal v. Wilson*, *supra*; *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992). In order to state a cause of action, the complaint must allege facts and not mere conclusions. Ark. R. Civ. P. 8; *see also Hollingsworth v. First Nat'l Bank & Trust Co.*, 311 Ark. 637, 846 S.W.2d 176 (1993); *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). When a complaint is dismissed without prejudice, the plaintiff has the option of pleading further or appealing. *Hollingsworth*, *supra*.

Arkansas is a fact–pleading state, and this court looks to the underlying facts

supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997). As our supreme court noted in *Ballard Group, Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276 at 5, 436 S.W.3d 445, 449,

> [g]enerally speaking, the granting of both a Rule 12(b)(6) dismissal and a Rule 41(b) dismissal are reviewed under the abuse-of-discretion standard. *J.B. Hunt, LLC v. Thornton*, 2014 Ark. 62, 432 S.W.3d 8 (Rule 12(b)(6)); *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, 385 S.W.3d 797 (Rule 41(b)). However, when this court must construe a court rule, our appellate review is de novo. *Jonesboro Healthcare Ctr.*, 2011 Ark. 501, 385 S.W.3d 797. Thus, in this case, we must determine whether the circuit court abused its discretion in dismissing the complaint; if it did not, then we determine whether the circuit court erred in applying the two-dismissal rule as expressed in Rule 41(b).

The same reasoning is applicable in the instant case, and so we turn to the causes of action at issue here, and we address them individually as to whether they were properly dismissed under Rule 12(b)(6) and ultimately Rule 41(b).

### A. Specific Performance/Breach of Contract

Panhandle alleged in both its first amended complaint and second amended complaint that it sought specific performance requiring the defendants to satisfy their contractual obligations under the May 2005 Agreement. In a contract-based case, pleadings "are to be liberally construed and are sufficient if they advise a defendant of his obligations and allege a breach of them." *Rabalaias*, 284 Ark. at 528, 683 S.W.2d at 921. This applies whether or not the contract-based theory is specific performance or breach of contract, even though the remedies differ. As explained in *Mitchell v. House*, 71 Ark. App. 19, 21, 26 S.W.3d 586, 587 (2000), "[s]pecific performance is an equitable remedy which compels performance of a contract on the precise terms agreed upon by the parties." Whether specific performance should be awarded in a particular case is generally a question of fact. *Id*.

The pleading requirements for breach-of-contract claims differ slightly, but the threshold for pleading such a claim is not high. To state a claim for breach of contract, "the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation of the defendant, and damages resulting to the plaintiff from the breach." *Rabalais*, 284 Ark. at 528–29, 683 S.W.2d at 921.

Here, we hold that both the first amended complaint and the second amended complaint included sufficient factual allegations to state claims for specific performance as well as breach of contract. In both pleadings, Panhandle identified the contract, BHP's obligations thereunder, how BHP breached, and finally how Panhandle was damaged.

We agree with Panhandle that the factual allegations in both the first amended complaint and the second amended complaint gave BHP fair notice of the claims and the grounds upon which those claims are based. *See Goldsby v. Fairley*, 309 Ark. 380, 384, 831 S.W.2d 142, 144 (1992). Accordingly, we conclude that the circuit court abused its discretion in twice dismissing the specific-performance and breach-of-contract claims pursuant to Rule 12(b)(6).

We also note that both parties devote significant attention to the defense of successor liability in their respective briefs. Specifically, BHP argues that Panhandle failed to allege facts that BHP assumed the liabilities of Chesapeake, while Panhandle maintains that the circuit court's "apparent acceptance of BHP's successor liability argument" constituted an abuse of discretion. In both of its orders granting BHP's two separate motions to dismiss, the circuit court did not expressly address successor liability. However, because we treat the

facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint, we conclude that Panhandle alleged sufficient facts in its complaints to establish that BHP assumed Chesapeake's liabilities—at least sufficient enough to survive a 12(b)(6) motion. Accordingly, we hold that Panhandle pled sufficient facts upon which relief can be granted, and BHP's factual arguments regarding successor liability are not germane for a motion to dismiss pursuant to Rule 12(b)(6).

## B. Reformation

Panhandle's claims of reformation of the May 2005 Agreement and reformation of the August 2010 Agreement are pled only in its second amended complaint. Reformation is an equitable remedy that is available when the parties have reached a complete agreement but, through mutual mistake, the terms of their agreement are not correctly reflected in the written instrument purporting to evidence the agreement. *Lambert v. Quinn*, 32 Ark. App. 184, 798 S.W.2d 448 (1990). A mutual mistake is one that is reciprocal and common to both parties, each alike laboring under the same misconception in respect to the terms of the written instrument. *Yeargan v. Bank of Montgomery Cty.*, 268 Ark. 752, 595 S.W.2d 704 (Ark. App. 1980). A mutual mistake must be shown by clear and decisive evidence that, at the time the agreement was reduced to writing, both parties intended their written agreement to say one thing and, by mistake, it expressed something different. *See Lambert*, *supra*. Whether a mutual mistake warranting reformation occurred is a question of fact. *Id*.

Panhandle's second amended complaint set forth two reformation claims: (1) an alternative request for reformation of the May 2005 Agreement based upon an unforeseen regulatory change in circumstances, which Panhandle intended to request if the circuit court

found that the May 2005 Agreement limited Panhandle's participation rights to "Chesapeake-drilled" wells; and (2) a request for reformation of the August 2010 Agreement based upon a mutual mistake of the parties.

We first look at the facts pled in Panhandle's second amended complaint regarding the August 2010 Agreement. Panhandle pled a mutual mistake with respect to this agreement which BHP does not dispute. The parties to the August 2010 Agreement intended that the execution of that agreement would establish Panhandle as a record working-interest owner in all relevant sections, but certain sections were left out by mistake. Panhandle identified the sections that were mistakenly omitted in paragraph 42 of its second amended complaint. Panhandle asserted that the wells at issue were all drilled in, or associated with, the identified sections, and therefore the August 2010 Agreement did not fix all the problems it was designed to fix. We hold that Panhandle was not required to plead anything more, and as such, we reverse the circuit court's decision to dismiss the reformation claim as to the August 2010 Agreement.

As to Panhandle's alternative request for reformation of the May 2005 Agreement, Panhandle argues that its factual allegations established an unforeseen change in circumstances that authorized reformation. Treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff as we are required to do, we will construe the pleadings liberally and resolve all reasonable inferences in favor of the complaint. *See J.B. Hunt, LLC v. Thornton*, 2014 Ark. 62, 432 S.W.3d 8. Our court also looks to the underlying facts supporting an alleged cause of action to determine whether the matter has been sufficiently pled. *Perry v. Baptist Health*, 358 Ark. 238, 189 S.W.3d 54

(2004). While Panhandle does not use the phrase "mutual mistake" with regard to its reformation claim as to the May 2005 Agreement, we conclude its facts as pled alleged a mutual mistake of the parties.

The complaint sets forth facts that establish that the parties made a mutual mistake in the May 2005 Agreement; when the agreement was executed, the parties believed Chesapeake would be the only party drilling wells on the tracts covered by that agreement. Whether either party to the May 2005 Agreement contemplated that leasing and drilling activity would become so popular that other operators would be awarded drilling rights in, or associated with, the leased sections is a question of fact that is inappropriate for a Rule 12(b)(6) dismissal. Accordingly, we reverse the circuit court's dismissal of Panhandle's reformation claims that were alleged in its second amended complaint.

C. Equitable Accounting/Appointment of a Special Master

In both its first and second amended complaints, Panhandle attempts to bring a separate claim for an equitable accounting and argues that it is entitled to have a special master appointed to conduct a full and complete accounting of defendants with respect to all revenues, profits, and other activities for the wells. However, Arkansas law is clear that an equitable accounting is a remedy and not a proper cause of action. *In re Estates of McKnight v. Bank of Am., N.A.*, 372 Ark. 376, 380, 277 S.W.3d 173, 177 (2008). Therefore, we hold that the circuit court did not abuse its discretion when it twice dismissed Panhandle's equitable-accounting claims under Rule 12(b)(6).[5]

---

[5]We note that we are not precluding Panhandle from seeking the remedy of an equitable accounting, but only recognizing that it cannot be asserted in a complaint as a cause of action.

### D. Unjust Enrichment

In both its first amended complaint and second amended complaint, Panhandle pled unjust enrichment, premised on the assumption that the circuit court might find the parties' written agreements inapplicable or unenforceable. Arkansas permits a complaint to state alternative legal theories even if those theories are inconsistent with one another. *Hoyle v. Faucher*, 334 Ark. 529, 975 S.W.2d 843, 845 (1998); *Albright v. S. Farm Bureau Life Ins. Co.*, 327 Ark. 715, 940 S.W.3d 488, 490 (1997). Pleading alternative legal theories does not negate either theory's viability. *Id.* Our appellate courts have allowed litigants to proceed under an alternative theory of unjust enrichment when there is a dispute as to a written agreement's applicability or enforceability. *See, e.g.*, *Campbell v. Asbury Auto, Inc.*, 2011 Ark. 157, 381 S.W.3d 21, 36; *QHG of Springdale, Inc. v. Archer*, 2009 Ark. App. 692, 373 S.W.3d 318.

Here, the circuit court presumably accepted BHP's argument that the May 2005 Agreement was unenforceable as against BHP or that there had been no breach of the May 2005 Agreement. As Panhandle argues, this should have opened the door for a viable unjust-enrichment claim because the May 2005 Agreement either did not fully address the subject matter of the lawsuit, or BHP's disputed performance would eventually be compelled under protest. *See QHG of Springdale, Inc.*, *supra*.

In both the first amended complaint and the second amended complaint, Panhandle identified which wells were at issue, based on its then existing knowledge, by well name, well number, and spud/drill date. In its complaints, Panhandle also identified what it believed it was entitled to from either Chesapeake or BHP—or both. We believe the facts

12

pled by Panhandle are sufficient to state a claim for unjust enrichment; accordingly, we hold

that the circuit court abused its discretion in dismissing Panhandle's alternative claim for

unjust enrichment on two occasions.

### III. Rule 41(b)

We turn now to the circuit court's dismissal pursuant to Rule 41(b), or what is

commonly referred to as "the two-dismissal rule." Rule 41 provides in pertinent part,

> (b) Involuntary Dismissal. In any case in which there has been a failure of the plaintiff
> to comply with these rules or any order of court or in which there has been no action
> shown on the record for the past 12 months, the court shall cause notice to be mailed
> to the attorneys of record, and to any party not represented by an attorney, that the
> case will be dismissed for want of prosecution unless on a stated day application is
> made, upon a showing of good cause, to continue the case on the court's docket. A
> dismissal under this subdivision is without prejudice to a future action by the plaintiff
> unless the action has been previously dismissed, whether voluntarily or involuntarily,
> in which event such dismissal operates as an adjudication on the merits.

Ark. R. Civ. P. 41(b) (2016).

This rule essentially mandates that a second dismissal of a lawsuit operates as an

adjudication on the merits and must be with prejudice if the previous dismissal was a result

of the plaintiff's failure to comply with the rules. The purpose of the two-dismissal rule is

"to prevent unreasonable use of the plaintiff's unilateral rights to dismiss an action prior to

the filing of the defendant's responsive pleading" and "to prevent delays and harassment by

plaintiffs securing numerous dismissals without prejudice." *Richard v. Union Pac. R.R. Co.*,

2012 Ark. 129, at 7–8, 388 S.W.3d 422, 426. Our supreme court has concluded that the

second Rule 12(b)(6) dismissal of claims is a dismissal with prejudice. *See Ballard Group*,

*supra*.

13

As noted above, our standard of review here is twofold. Normally, a Rule 41 dismissal is reviewed under an abuse-of-discretion standard. *See Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs.*, 2011 Ark. 501, 385 S.W.3d 797. When this court must construe the meaning of a court rule, however, our review is de novo. *Richard, supra.* Because we have concluded that the claim for equitable accounting/appointment of a special master was twice properly dismissed pursuant to Rule 12(b)(6), we hold that the Rule 41(b) dismissal of this claim with prejudice was appropriate. That part of the Rule 41(b) dismissal is therefore affirmed. However, because we conclude that the circuit court abused its discretion in dismissing the claims of specific performance, breach of contract, reformation of the May 2005 Agreement, reformation of the August 2010 Agreement, and unjust enrichment pursuant to Rule 12(b)(6), we hold that the Rule 41(b) dismissal is also improper as to those claims, and we therefore reverse and remand.

Affirmed in part; reversed and remanded in part.

KLAPPENBACH and VAUGHT, JJ., agree.

*Morgan Law Firm, P.A.*, by: *M. Edward Morgan*; and *Fellers Snider Blankenship Bailey & Tippens, P.C.*, by: *Mark K. Stonecipher* and *C. Eric Shephard*, *pro hac vice*.

*PPGMR Law, PLLC*, by: *Julie DeWoody Greathouse* and *Kimberly D. Logue*, for appellee.